STATE of Wisconsin, Plaintiff-Appellant,

v.

James DEKKER, Defendant-Respondent.

STATE of Wisconsin, Plaintiff-Appellant,

v.

George KALT, Defendant-Respondent.†

Court of Appeals

*No. 82–1066–CR. Submitted on briefs January 12, 1983.—*
*Decided March 7, 1983.*
(Also reported in 332 N.W.2d 816.)

† Petition to review denied.

For the plaintiff-appellant the cause was submitted on the briefs of *Bronson C. La Follette*, attorney general, and *Marguerite M. Moeller*, assistant attorney general.

For the defendants-respondents the cause was submitted on the brief of *Gerald P. Boyle* and *Roland Steinle, Jr.*, for James Dekker, and *Richard Surges* for George Kalt, all of Milwaukee.

Before Decker, C.J., Moser, P.J., and Wedemeyer, J.

MOSER, P.J.   The State appeals from a memorandum decision[1] of the trial court entered April 26, 1982, dismissing the criminal complaints against James Dekker (Dekker) and George Kalt (Kalt). The trial court's decision derives from Dekker's and Kalt's motion to dismiss the complaints.[2] The complaints allege that Dekker and Kalt, as public employees, intentionally failed to perform a known mandatory, nondiscretionary and ministerial duty of their employment contrary to sec. 946.12(1),

[1] We note that no order or judgment was entered in this case and that the State merely appeals from the memorandum decision. The supreme court has stated that "[t]he test of finality is not what later happened in the case but rather, whether the trial court contemplated the document to be a final judgment or order at the time it was entered. This must be established by looking at the document itself, not to subsequent events." *Radoff v. Red Owl Stores*, 109 Wis. 2d 490, 493, 326 N.W.2d 240, 241 (1982) *quoting Fredrick v. City of Janesville*, 92 Wis. 2d 685, 688, 285 N.W.2d 655, 657 (1979). In *Fredrick* the supreme court acknowledged that a memorandum opinion or decision may constitute an order if it in fact constitutes the final ruling of the court. *Fredrick, supra* at 687, 285 N.W.2d at 656; *contra Wick v. Mueller*, 105 Wis. 2d 191, 193, 313 N.W.2d 799, 800 (1982). (In *Wick* the supreme court stated "under no circumstances is an opinion or memorandum decision of a court appealable.") We hold that the trial court's memorandum decision here constitutes a final order . because the trial court contemplated that this document was to be final.

[2] Sec. 971.31(5)(c), Stats.

Stats. We affirm the trial court's dismissal of the complaints.

On July 9, 1981, Dekker and Kalt were on patrol duty as members of the Milwaukee Police Department's tactical squad. At approximately 11 p.m., they received a radio dispatch advising them that a sexual assault had occurred at North 20th and West Michigan Streets in the city of Milwaukee. This dispatch included a description of the assailant. As they drove westward on Wisconsin Avenue, they came upon Ernest R. Lacy (Lacy) at the intersection of North 23rd Street and West Wisconsin Avenue. Dekker, Kalt and Thomas Eliopula, Milwaukee police officer not charged herein, asked Lacy to step over to the patrol car. As they approached Lacy, Lacy attempted to flee. A violent struggle ensued with Lacy finally being handcuffed.

Shortly thereafter, a police conveyance van arrived to pick up Lacy. Lacy was placed on his stomach on the floor of the van. The van then proceeded to the site of the sexual assault so that the sexual assault victim could view Lacy. On the way, the van stopped at North 25th Street and West Kilbourn Avenue to pick up Tyrone Brown (Brown), who had been arrested on a warrant for traffic violations. The van then proceeded to North 20th and West Michigan Streets.

During the trip to 20th and Michigan, Brown commented to Dekker, who was riding in the rear of the van with the prisoners, that Lacy was not breathing. When the van arrived at 20th and Michigan, Dekker attempted to rouse Lacy with an ammonia capsule, but Lacy did not respond. At the same time, approximately 11:26 p.m., Dekker called for an ambulance because Lacy was "not breathing." Paramedics arrived at 11:31 p.m. and undertook cardiopulmonary resuscitation (CPR) and other means to revive Lacy. Lacy was conveyed to Deaconess Hospital where he was pronounced dead within an hour.

An autopsy was performed on Lacy's body on July 10, 1981, with additional examinations taking place on July 11th and 12th. An inquest was held between September 14, and October 12, 1981. At the inquest, it was established that both Dekker and Kalt were certified by the Milwaukee Police Department in CPR and that they did not render first aid to Lacy in the form of CPR. It was from the testimony at the inquest that the complaints against Dekker and Kalt were drawn.

The testimony of Dr. Robert W. Huntington III, a board-certified pathologist from the University of Wisconsin School of Medicine, was pertinent to the trial court's decision to dismiss the complaints. It reads in part as follows:

Q  [By the District Attorney]
    Just so the jury further understands, you are part, you've trained, ah, in C.P.R.; am I correct?
A  That's correct.
Q  You in fact are a volunteer on a rescue squad; am I correct?
A  That's correct.
Q  As well as being a physician?
A  That's correct.
Q  So have you applied C.P.R. yourself under—under rescue situations?
A  I have not had to yet and I frankly hope I never do. But, I have seen the results of bodies rolling through emergency rooms with a somewhat keener eye, shall we say, ah, due to my participation in, ah, District 1, Dane County E.M.S., emergency medical services.
    . . . .
Q  Do you start mouth-to-mouth if a person is still breathing in any fashion?
A  Again, coming off the ambulance, we would not, we would give them oxygen first and probably bag breathe them first but, again, if it looks like they're —if you really would think that they're not oxygenating enough to keep them going, about that time it's start—is the time to yell for help and start

making sure what you can do. Mouth-to-mouth, whatever.

Q This is a—a judgment call to some extent?

A But that is, to some extent, a judgment call.

Q In other words, the breathing hasn't stopped. Once the breathing stops—

A Once the breathing has stopped, you've got to go. But, again, it would be a judgment call, a real, and I would not say an always easy judgment call, that if you think that there's some breathing still going when things are at such a low ebb that it's time to start really hauling.

Following extensive briefs and arguments by counsel, the trial court issued a memorandum decision which held that:

(1) The duty which Dekker and Kalt were alleged to have failed to perform, i.e., the duty of performing first aid when necessary pursuant to Milwaukee Police Department rule 4, sec. 67, "is not one which is strictly and purely mandatory, nondiscretionary and ministerial. That duty calls for judgment. Therefore, the alleged duty is neither nondiscretionary nor ministerial."

(2) The Milwaukee Police Department rule "is not law and does not have the force of law" as required by sec. 946.12(1), Stats.

The State appeals from this decision.

The State presents two issues on appeal:

(1) whether the trial court erred by ruling that a police officer's duty of performing first aid when necessary is not mandatory, nondiscretionary and ministerial; and,

(2) whether the trial court erred by ruling that Milwaukee Police Department rule 4, sec. 67 is not law and does not have the force of law as required by sec. 946.12(1), Stats.

Milwaukee Police Department rule 4, sec. 67 reads as follows:

It shall be the duty of every member of the police force to master thoroughly the subject of first aid to the injured, as taught in the Police Academy in order that he may be prepared to apply first aid promptly and properly in any emergency cases which may come to his attention. Any member failing to render first aid whenever necessary, or who may be found incompetent to do so, shall be charged with neglect of duty.

Section 946.12(1), Stats., reads as follows:

946.12   Misconduct in public office.   Any public officer or public employe who does any of the following is guilty of a Class E felony:
(1)   Intentionally fails or refuses to perform a known mandatory, nondiscretionary, ministerial duty of his office or employment within the time or in the manner required by law; . . . .

When the sufficiency of a criminal complaint is challenged, the alleged facts in the complaint must be sufficient to establish probable cause, not in a hypertechnical sense, but in a minimally adequate way through a common sense evaluation by a neutral magistrate making a judgment that a crime has been committed.[3] A criminal complaint must contain facts which are themselves sufficient or give rise to reasonable inferences which are sufficient to establish probable cause.[4] A criminal complaint is sufficient if a fair-minded magistrate could reasonably conclude that the facts alleged justify further criminal proceedings and that the charges are not merely capricious.[5]

In construing a penal statute on a motion to dismiss a criminal complaint, trial courts and appellate courts must

---

[3] *State v. Williamson*, 109 Wis. 2d 83, 87, 325 N.W.2d 360, 363 (Ct. App. 1982).

[4] *State v. Becker*, 51 Wis. 2d 659, 662, 188 N.W.2d 449, 451 (1971).

[5] *Id.* at 663, 188 N.W.2d at 451.

strictly construe the statute in question in favor of the accused.[6] However, this does not mean that the narrowest possible construction must be adopted in disregard of the purpose of the statute.[7] Where words used in a statute are not specifically defined they should be accorded their ordinary and accepted meaning.[8] This meaning may be established by the definition contained in a recognized dictionary.[9]

Black's Law Dictionary defines "mandatory" as: "[c]ontaining a command; preceptive; imperative; peremptory; obligatory."[10] Nondiscretionary is the opposite of discretionary. Black's defines "discretionary acts" as: "[t]hose acts wherein there is no hard and fast rule as to course of conduct that one must or must not take and, if there is clearly defined rule, such would eliminate discretion."[11]

The accepted meaning of ministerial is to be found in our statutes and case law. The code of ethics for public officials defines "ministerial action" as: "an action that a person performs in a given state of facts in a prescribed manner in obedience to the mandate of legal authority, without regard to the exercise of the person's own judgment as to the propriety of the action being taken."[12] Our supreme court has stated that "[a] public officer's duty is ministerial only when it is absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with

---

[6] *See State v. Olson,* 106 Wis. 2d 572, 584–85, 317 N.W.2d 448, 454–55 (1982).

[7] *Id.* at 585, 317 N.W.2d at 455.

[8] *Town of Lafayette v. City of Chippewa Falls,* 70 Wis. 2d 610, 619, 235 N.W.2d 435, 440 (1975).

[9] *Id.*

[10] Black's Law Dictionary 867 (5th ed. 1979).

[11] *Id.* at 419.

[12] Sec. 19.42 (8), Stats.

such certainty that nothing remains for judgment or discretion."[13]

We agree with the trial court's analysis that, while rule 4, sec. 67 requires police officers to give first aid in emergency situations that come to their attention, it does not define with sufficient certainty the time, mode or occasion for the use of such first aid so as to eliminate any judgment or discretion from being exercised by police officers. As noted above, the record contains the testimony of Dr. Huntington who stated that the use of CPR is "to some extent, a judgment call."

We hold that the trial court was correct in dismissing the complaints because the duty to render first aid, particularly CPR, pursuant to rule 4, sec. 67, calls for a police officer to exercise his judgment with respect to: (1) determining that an emergency exists; (2) determining whether a person is in need of first aid; and (3) determining what type of first aid is necessary, e.g., CPR. We further hold that the duties imposed by departmental rules should not, as a matter of public policy, be interpreted as being nondiscretionary or ministerial duties under sec. 946.12(1), Stats.

The failure to carry out a duty contained in a departmental rule cannot be bootstrapped into the felony of misconduct in public office. It is contrary to public policy to convert a departmental disciplinary rule into a crime, except if the departmental rule specifically prohibits some form of criminal conduct.

Accordingly, we hold that the instant criminal complaints fail to state minimal facts or to contain reasonable inferences derived from those facts sufficient to es-

[13] *Cords v. Anderson*, 80 Wis. 2d 525, 541, 259 N.W.2d 672, 679 (1977).

tablish the criminal conduct required to charge these officers with the felony of misconduct in public office.

Because we hold that the criminal complaints are insufficient, we need not address the State's other issue.

*By the Court.*—Order affirmed.