## STATE of Wisconsin EX REL. George KALT, Thomas Eliopul, James Dekker, Kenneth Kmichik and Robert Enters, Petitioners-Appellants,†

### v.

### BOARD OF FIRE & POLICE COMMISSIONERS FOR the CITY OF MILWAUKEE, Respondent.

Court of Appeals

*No. 87-1929. Submitted on briefs April 26, 1988.—Decided June 14, 1988.*

(Also reported in 427 N.W.2d 408.)

† Petition to review denied.

For the petitioners-appellants Eliopul, Kalt, Enters & Kmichik the cause was submitted on the briefs of *Gerald P. Boyle,* of Milwaukee. For the petitioner-appellant Dekker the cause was submitted on the briefs of *Kenneth J. Murray,* of Milwaukee.

For the respondent the cause was submitted on the briefs of *Coffey, Coffey & Geraghty* by *William M. Coffey,* of Milwaukee and *Kevin E. O'Neill, S.C.* by *Kevin E. O'Neill,* of Milwaukee.

Before Moser, P.J., Wedemeyer and Sullivan, JJ.

MOSER, P.J. Thomas Eliopul, George Kalt, James Dekker, Kenneth Kmichik and Robert Enters (the appellants) appeal from an order denying their petition for writ of certiorari and upholding the disciplinary action taken against them by the Milwaukee Board of Fire and Police Commissioners (the Board). The appellants raise five issues: (1) whether

506

the rule which the appellants were found to have violated is unconstitutionally vague; (2) whether the prehearing publicity deprived the appellants of a fair hearing; (3) whether the Board demonstrated partiality or prejudice against the appellants during their disciplinary hearing; (4) whether the use of prior videotaped inquest testimony at the disciplinary hearing was improper; and (5) whether the testimony of two expert witnesses should have been allowed into evidence. We are not convinced by any of the appellants' arguments and affirm.

This appeal arises out of the much publicized death of Ernest Lacy (Lacy) in 1981. The appellants were all Milwaukee police officers who at various times had custody of Lacy of July 9, 1981. Lacy died while in custody. The facts, as found by the Board after a full hearing, are as follows: Lacy was stopped by Kalt, Eliopul and Dekker because he matched the general description of a sexual assault suspect. After a patdown search, Lacy moved quickly as if to run away. A struggle ensued and Lacy and the three officers fell to the ground. Lacy was pinned on his stomach by the officers and his hands were cuffed behind his back.

The Board further found:

> While Mr. Lacy was handcuffed and lying on his stomach on the ground, Respondent Kalt was holding down his left lower leg and Respondent Dekker was holding down his right lower leg. This was accomplished by Respondents Kalt and Dekker, at various times standing on Mr. Lacy's ankles, standing on his pants legs, or grasping his legs about the ankles and holding firm. Respondent Eliopul was at Mr. Lacy's upper torso attempting to restrain upper body movement by at various times sitting on Mr. Lacy, using his forearm on Mr.

Lacy's back, and placing his knee on Mr. Lacy's lower back, upper back, and neck area. While Mr. Lacy was in this position, Respondent Eliopul did on at least three (3) occasions jerk Mr. Lacy's arms upward to an angle of 70 to 80 degrees. Respondent Eliopul's knee was applied to the back while Mr. Lacy was struggling in the handcuffed position on his stomach and was continued after the struggling ceased. Respondent Eliopul's knee was on the area of Mr. Lacy's neck for at least one minute. Respondent Eliopul knelt with one knee on Mr. Lacy's back on three different occasions varying in length from 30 to 45 seconds each. The amount of pressure applied on these occasions varied, but at times Respondent Eliopul was applying his full body weight on Mr. Lacy's back. Respondent Eliopul remained upon Mr. Lacy's back until the van arrived. Mr. Lacy was motionless for at least one minute prior to the arrival of the van.

When the van arrived, Enters, Eliopul and Kmichik carried Lacy and put him in the van lying face down on the floor. Lacy was limp, his head was down and his feet were dragging while being carried. Enters and Dekker rode with Lacy in the rear of the van and Kmichik drove. The officers never checked Lacy's condition.

When the van arrived at the scene of the crime, Dekker and Enters left the van. Shortly thereafter, Dekker returned to the van and attempted to rouse Lacy by shaking him. When Lacy did not respond, Dekker waived an ammonia capsule under Lacy's nose. Again, Lacy did not respond. While Dekker radioed for an ambulance, Kalt observed that Lacy had a rapid pulse and troubled breathing. Kalt informed Dekker of Lacy's condition and walked away

508

from the van. Dekker exited the van and stood at the rear doors.

When the ambulance arrived, paramedics found Lacy lying unattended in the van. Lacy had no pulse and was not breathing. Cardiopulmonary resuscitation was attempted, but was unsuccessful.

Relying on these facts, the Board found Kmichik, Enters, Dekker and Kalt guilty of failing to render first aid to Lacy and suspended them without pay. The Board found Eliopul guilty of use of excessive force and failure to render first aid. Eliopul was discharged.

The appellants first argue that the rule requiring them to render first aid[1] is unconstitutionally vague and that, therefore, they cannot be disciplined for violating it. The Board argues that the rule is not vague and that, even if it is, the appellants waived the issue by not raising it at the hearing.

■

Addressing the waiver issue first, we note that it has long been established that when a challenge is made to the constitutionality of a statute, ordinance or, in this case, an administrative rule, on the grounds of vagueness, an issue of subject matter jurisdiction is raised which this court is bound to consider.[2] We therefore must address the appellants' argument.

---

[1]Rule 4, sec. 67, of the Milwaukee Police Department Rules and Regulations states:

> It shall be the duty of every member of the police force to master thoroughly the subject of first aid to the injured, as taught in the Police Academy, in order that he may be prepared to apply first aid promptly and properly in any emergency cases which may come to his attention. *Any member failing to render first aid whenever necessary, or who may be found incompetent to do so, shall be charged with neglect of duty.* [Emphasis added.]

[2]*See State v. Wilks,* 117 Wis. 2d 495, 505, 345 N.W.2d 498, 502–03 (Ct. App. 1984), *aff'd,* 121 Wis. 2d 93, 358 N.W.2d 273

It is a fundamental constitutional rule that "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process law."[3] This rule applies to administrative regulations affecting conditions of governmental employment in the same manner as it applies to penal statutes.[4] "[T]he root of the vagueness doctrine is a rough idea of fairness."[5]

> In determining whether [Rule 4, sec. 67] conforms with the constitutionally-mandated "rough idea of fairness," it is necessary to examine whether the rule creates a standard of conduct which is capable of objective interpretation by those policemen who must abide by it, by those Departmental officials who must enforce it, and by any administrative or judicial tribunal which might review any disciplinary proceeding.[6]

Not all statutes or rules which may arguably be vague are constitutionally infirm. Even where the outermost edges of the statute or rule may be imprecise, a person to whose conduct the statute or rule clearly applies has no standing to attack the statute as

---

(1984). We note that this same argument was made by the Board in the previous appeal in this case. *Eliopul v. Board of Fire and Police Comm'rs,* No. 86–0108 unpublished slip op. (Wis. Ct. App. Oct. 8, 1986). In that appeal, we rejected the Board's argument on the same grounds. *Id.* at 4–5.

[3]*Bence v. Breier,* 501 F.2d 1185, 1188 (7th Cir. 1974).

[4]*Id.*

[5]*Id.* at 1189.

[6]*Id.* at 1190.

vague and void on its face.[7] Thus, if the conduct falls within the "hard core" of the proscriptions of the statute or rule, the actor cannot claim that the proscriptions may be unconstitutionally vague in some situations.[8]

In the present case, the conduct of the appellants fell well within the hard core of the rule's proscriptions. The facts show that after a violent struggle, the appellants used a great deal of force to subdue Lacy. This force included putting a knee on Lacy's neck. Lacy lost consciousness and was carried into the police van. While in the van, Lacy's pulse was rapid and his breathing was troubled and short. An ammonia capsule was insufficient to rouse him. Despite what was obviously a situation requiring the rendering of first aid, none of the appellants took time to determine Lacy's true condition. Rather, they abandoned him in the van until paramedics arrived and found him dead. With facts such as these, ordinary men of common intelligence would know that Rule 4, sec. 67 required that the appellants render first aid to Lacy.

The appellants argue, however, that this court, in *State v. Dekker*[9] has already determined that the proscriptions of Rule 4, sec. 67 are vague. The appellants misconstrue our holding. In *Dekker*, the issue was whether Rule 4, sec. 67 imposes "a known mandatory, nondiscretionary, ministerial duty" on a police officer to render aid. If so, the failure to render first aid when necessary would lead to criminal liability under sec. 946.12, Stats. (1983–84). We held that the requirements of Rule 4, sec. 67 were not ministerial because they did not "eliminate any

---

[7] *Wilks,* 117 Wis. 2d at 506, 345 N.W.2d at 503.
[8] *Id.*
[9] 112 Wis. 2d 304, 332 N.W.2d 816 (Ct. App. 1983).

judgment or discretion from being exercised by police officers."[10]

Our holding in *Dekker* in no way implies that Rule 4, sec. 67 is unconstitutionally vague. The fact that a rule requires the exercise of some discretion does not mean that men of common intelligence must necessarily guess at its meaning. We therefore reject the appellants' argument that Rule 4, sec. 67 is void for vagueness.

■

The appellants next argue that the extensive publicity prior to the disciplinary hearing infected the minds of the Board members and deprived them of a fair hearing. The question raised by this issue is whether the Board abused its discretion in hearing the case. In deciding this question we must make an independent evaluation of the circumstances surrounding the case.[11] In other words, we must look to the evidence presented in support of the appellants' argument and examine the original documents to determine whether an abuse of discretion has occurred.[12]

■

In searching the record, we are unable to discover any evidence of the pretrial publicity or its effect on the Board. This is despite the fact that the appellants state in their brief that "clippings dealing with this matter filled more than 31 scrapbooks." "Without the nature of the publicity concerning the crime demonstrated by evidence in the record, there is no way for this court to determine its 'inflammatory nature,' the

[10]*Id.* at 312, 332 N.W.2d at 820.
[11]*Kutchera v. State,* 69 Wis. 2d 534, 548, 230 N.W.2d 750, 758 (1975).
[12]*Id.*

first of the factors to be considered before holding that the [Board's] discretion has been abused."[13] Because the appellant's argument has become "a complaint without substance or foundation as to facts in the record,"[14] we reject it.[15]

The next argument advanced by the appellants is that the acts of the Board members demonstrated prejudice or partiality against the appellants and their case and that as a result, they were denied their due process right to a fair hearing.

The appellants correctly contend that "an unbiased tribunal is a constitutional necessity in a quasi-judicial hearing and that the denial of such a tribunal is the denial of due process."[16] Whether actual bias may be found in the record is not necessarily determinative. Circumstances which show a high probability of bias may be sufficient to give the proceedings an unacceptable constitutional taint.[17]

Despite this permissive standard of proof, the party alleging bias assumes a heavy burden of showing unfairness.[18] "[The objector] must overcome the presumption of honesty and integrity in those serving

[13]*Id.* at 549, 230 N.W.2d at 758.

[14]*See id.*

[15]We note that in response to the trial court's statement that the appellants' argument was mere allegation without proof, counsel stated "That's true. I submit that's the case then and I don't know that I could even do anything better than what I've already done, and I don't think I could ever find the fundamental proof necessary."

[16]*State ex rel. DeLuca v. Common Council of Franklin,* 72 Wis. 2d 672, 682, 242 N.W.2d 689, 695 (1976).

[17]*Id.* at 684, 242 N.W.2d at 695.

[18]*Id.* at 684, 242 N.W.2d at 696.

as adjudicators . . . ."[19] In this case, the appellants have failed to overcome this presumption.

The appellants cite eight specific examples of conduct in arguing that the Board was biased against them. The first and fifth examples relate to the prehearing suspension of the three officers who originally took Lacy into custody. They argue that this action shows that the Board had already judged the appellants guilty. This argument overlooks the fact that the Board was fully authorized to take this action. Without more evidence, we cannot say that the authorized suspension of the officers prior to a hearing would cast doubt on the Board's ability to hear the case fairly.

The second act which the appellants cite in support of their argument is that the Board refused to grant Kalt and Dekker an adjournment of the disciplinary hearing until this court decided their appeal in a criminal matter. The appellants have failed to inform us why an adjournment of the administrative hearing was necessary pending the outcome of a criminal matter. Without more, we can see no error or harm in this ruling.

The third, seventh and eighth reasons that the appellants claim prejudice relate to the substantial community publicity concerning this case. We have already disposed of this argument and will not consider it further.

The fourth act allegedly showing bias or prejudice by the Board is its refusal to be voir dired by the appellants' counsel before the hearing. The appellants, however, have cited no authority giving them the right to voir dire a quasi-judicial tribunal.

[19]*Id.* (brackets in original).

Finally, the sixth "prejudicial act" set forth by the appellants is that the Board had, in a previous hearing in a totally unrelated matter, decided that the testimony of Kalt was not credible. The appellants contend that this finding necessarily prejudiced the Board against Kalt's defense in this action as well as the defense of all the appellants. As the trial court stated, "evaluations of credibility do not and cannot ipso facto be taken as indications of bias." Without facts to support their argument of bias, we have no reason to believe that the Board could not evaluate Kalt's testimony in the present case without regard to its determination of credibility in an entirely extraneous matter.

The next issue which the appellants raise is whether the Board erred in admitting into evidence a videotape of the appellants' testimony given during an inquest into Lacy's death. The appellants argue that Commission Rule 15(b),[20] which prohibits calling a party adversely, precluded the admission of the videotaped testimony. We are unconvinced.

Section 908.01(4)(b)1, Stats., states that a statement made by a party is not hearsay and may be used against him. This rule applies in criminal as well as civil cases.[21] Yet, the appellants argue that such a statement could not be used in the administrative

[20]Rule 15(b) states: "No party may be called adversely by either the complainant or the accused."

[21]We note that the appellants concede this in their brief when they state: "There is no question that a statement made by a person can be used against that person in a future criminal proceeding if indeed there is one. There is also no question that under most circumstances the transcript could be used in civil proceedings."

hearing because Rule 15(b) provided that no party may be called adversely.

■

It goes without saying that a defendant in a criminal trial may not be called adversely.[22] Nevertheless, sec. 908.01(4)(b)1, Stats., allows the defendant's prior statements to be used against him. As the trial court stated, "[i]t is no more a violation of Rule 15(b) to use prior statements of a police officer at a hearing than the use of a criminal defendant's prior statements under 908.01(4)(b) is a violation of the 5th Amendment. So that argument, as well, must be rejected."

■

Finally, the appellants argue that expert testimony as to whether the force used was excessive should not have been allowed at the hearing or relied on by the Board because the testimony was "so outlandish that [it was] not worthy of note."

Section 907.02, Stats., states:

> Testimony by experts. If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Whether an expert's testimony is properly admitted depends upon whether the testimony would assist the trier of fact in understanding the evidence or determining a fact in issue.[23]

---

[22]U.S. Const. amend V; Wis. Const. art. I, sec. 8.

[23]*Maci v. State Farm Fire & Casualty Co.,* 105 Wis. 2d 710, 720, 314 N.W.2d 914, 920 (Ct. App. 1981).

The elements of admissible expert testimony are: (1) the subject is distinctively related to some science, profession, business or occupation and therefore beyond the realm of the average layman; (2) the expert has sufficient skill in the area to aid the trier of fact in his search for the truth, and (3) the state of the pertinent art or scientific knowledge in the subject is sufficiently developed to allow a reasonable opinion to be asserted by an expert.[24]

The appellants do not argue that expert testimony was not appropriate in the disciplinary hearing, only that the testimony of the two experts who appeared should not have been admitted because it was incredible. As our supreme court has stated, however, "[w]hether a scientific witness whose testimony is relevant is believed is a question of credibility for the finder of fact, but it clearly is admissible."[25] Thus, the expert's testimony was admissible. Whether it was to be believed was an issue left for the Board, acting as the finder of fact, to decide.

*By the Court.*—Order affirmed.

---

[24]*Brandt v. Riordan,* 95 Wis. 2d 573, 590, 291 N.W.2d 591, 599 (Ct. App. 1980), *rev'd sub nom. on other grounds Brandt v. Witzling,* 98 Wis. 2d 613, 297 N.W.2d 833 (1980).

[25]*State v. Walstad,* 119 Wis. 2d 483, 519, 351 N.W.2d 469, 487 (1984).