STATE of Wisconsin EX REL. James R. REEDY,
Plaintiff-Appellant,

v.

LAW ENFORCEMENT DISCIPLINARY COMMIT-
TEE of the City of Stanley, Wisconsin, and Thomas L.
Thornton, Chief of Police of the City of Stanley, Wis-
consin, Defendants-Respondents.

Court of Appeals

*No. 89–1289. Submitted on briefs March 22, 1990.—Decided
May 8, 1990.*

(Also reported in 457 N.W.2d 505.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Harry R. Hertel* of *Hertel, Carson, White, Schilling & Barr, S.C.* of Eau Claire.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Arnold P. Anderson* of *Capwell, Berthelsen, Nolden, Casanova, Pitts & Kallenbach, Ltd.,* of Racine.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.    James Reedy, a former city of Stanley police officer, appeals an order limiting the scope of certiorari review and a judgment upholding his dismissal from the police department. Reedy argues that the circuit court erred by limiting its review to whether the Law Enforcement Disciplinary Committee (committee) acted within its jurisdiction and proceeded under a correct theory of law. He contends that the circuit court should have also examined the sufficiency of the evi-

dence and whether the committee's action was arbitrary, oppressive or unreasonable. Finally, he argues that even if the circuit court's decision on the scope of certiorari was correct, the committee did in fact act outside of its jurisdiction and proceeded under an incorrect theory of law. We disagree and affirm the circuit court.

Reedy began employment as a city of Stanley police officer in 1979. According to the committee's findings:

> On March 25, 1988 Officer Reedy, while off-duty, went to a trailer located . . . in the City of Stanley . . .. An argument began inside the trailer between Officer Reedy and [his then girlfriend] Diane Weber. The parties agree that on at least one occasion Ms. Weber asked Officer Reedy to leave [and] he refused. [When] Ms. Weber left the trailer, Officer Reedy pursued her and the argument escalated outside the trailer. Ms. Weber picked up an object and threw it, unintentionally breaking [the] windshield of [Reedy's] privately owned vehicle. This apparently further angered Officer Reedy, whereupon he grabbed her by her clothing, pulling her shirt tight enough around her neck to choke her. He began shaking her with sufficient force that, when his hand slipped off her garments, he struck her face hard enough to leave a mark.

While the committee's factual findings are limited to this one episode, its determination makes it clear that this incident was the culmination of a turbulent relationship between Reedy and Weber that had previously raised concerns in the department.

When notified of the incident, Police Chief Thomas Thornton suspended Reedy with pay, effective March 25. A complaint was drawn up on or around June 8 and served on Reedy June 27. The committee convened on June 27, without Reedy's knowledge, and voted to con-

tinue the suspension with pay until the disciplinary hearing.[1]

At the July 18 disciplinary hearing, Reedy objected to the committee's composition. He specifically objected to Thornton's selection of the members because Thornton had filed the charges. He also claimed that the members demonstrated their bias when one member had been quoted in a newspaper prior to the disciplinary hearing discussing Reedy's lack of credibility. The hearing was held over Reedy's objections, and the committee sustained the charge and determined that he should be removed from the police department for conduct unbecoming an officer. Reedy did not file a notice of appeal within ten days of the filing of the order of removal by the committee. Instead, he filed a petition for a writ of certiorari fourteen days after the filing of that order.

The circuit court issued a writ of certiorari but held that its review was limited to whether the commission had acted within its jurisdiction and whether it had proceeded under a correct theory of law. The court determined that the commission had done both and sustained the discipline imposed, denying Reedy's request for relief. Reedy appeals the circuit court's order regarding the scope of certiorari review, as well as the judgment itself.

We first examine the scope of the circuit court's certiorari review. Generally, a circuit court may review four factors on certiorari in a police disciplinary case under sec. 62.13(5), Stats.:

---

[1]Earlier on June 27, the department had reinstated Reedy. Thus, technically Reedy was an active member of the force for about five hours on that date. However, because we determine that the suspensions were not penal in nature, Reedy's brief reinstatement does not affect the outcome of this case.

"(1) Whether the board kept within its jurisdiction; (2) whether it proceeded on correct theory of law; (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question."

*State ex rel. Kaczkowski v. Fire & Police Comm'rs,* 33 Wis. 2d 488, 500, 148 N.W.2d 44, 50 (1967) (quoting *Oliver Iron Mining Co. v. Commissioner of Taxation,* 76 N.W.2d 107, 111 (Minn. 1956)). However, when the petitioner enjoys a direct appeal right under sec. 62.13(5)(i), the scope of circuit court certiorari review is limited to the first two factors: whether the board had jurisdiction and whether it acted under a correct view of the law. *State ex rel. Smits v. City of De Pere,* 104 Wis. 2d 26, 31–32, 310 N.W.2d 607, 609 (1981).

Reedy contends that he lacked a direct appeal right because the city had not adopted the portion of the statute specifically allowing for a direct appeal. Many cities in Wisconsin have a permanent board of police and fire commissioners. However, the police disciplinary procedures set forth in sec. 62.13(1) to (6), Stats., do not apply to cities with a population of less than 4,000, such as Stanley, unless adopted by ordinance. Because the city had not adopted an ordinance applying these sections, the committee was convened instead pursuant to sec. 62.13(6m)(a).

Section 62.13(6m)(a), Stats., provides that the committee shall act under subsec. (5) in place of a board of police and fire commissioners, such as exists in larger cities. Subsection (5) of sec. 62.13 is entitled "Disciplinary actions against subordinates" and sets forth the procedure to be followed by a board of police and fire commissioners in taking disciplinary actions against a

member of a police force. Any person removed by a board may appeal from the order to the circuit court by serving a written notice on the board secretary within ten days after the order was filed. Sec. 62.13(5)(i), Stats.

If a law enforcement committee under subsec. (6m)(a) acts under subsec. (5) in place of the board, it follows that the appeal process under subsec. (5)(i) applies to the committee's orders as it does to the board's. Thus, a police officer aggrieved by a decision of a law enforcement disciplinary committee convened pursuant to sec. 62.13(6m)(a), Stats., may file a notice of appeal to the circuit court.

An aggrieved person may file both an appeal and a petition for a writ of certiorari. *State ex rel. Enk v. Mentkowski,* 76 Wis. 2d 565, 571, 252 N.W.2d 28, 30 (1977). Where an aggrieved party has a direct appeal right and files a petition for certiorari, the scope of review on the writ of certiorari is narrowed to whether the committee kept within its jurisdiction and whether it proceeded on a correct theory of the law. *Hennekens v. City of River Falls Police & Fire Comm'n,* 124 Wis. 2d 413, 419, 369 N.W.2d 670, 674 (1984). Because Reedy failed to file an appeal, the circuit court and this court are limited on the writ of certiorari to two questions: whether the committee kept within its jurisdiction and whether it proceeded on a correct theory of the law. Our review is without deference to the circuit court's decision. *State ex rel. Smith v. City of Oak Creek,* 131 Wis. 2d 451, 455, 389 N.W.2d 366, 367 (Ct. App.), *aff'd,* 139 Wis. 2d 788, 407 N.W.2d 901 (1987). We next address these two issues.

Reedy's first argument is that the committee was not a fair and impartial decision-maker as required by

*Guthrie v. WERC,* 111 Wis. 2d 447, 331 N.W.2d 331 (1983). At first blush, this would appear to be outside the scope of the two issues we are empowered to review. However, similar cases on writs of certiorari reach the issue of whether the presence of an allegedly biased decision-maker violated the employee's due process rights. *Hennekens,* 124 Wis. 2d at 422, 369 N.W.2d at 675; *State ex rel. Kalt v. Board of Fire & Police Comm'rs,* 145 Wis. 2d 504, 513, 427 N.W.2d 408, 412 (Ct. App. 1988). Therefore, we examine the merits of Reedy's argument.

Reedy relies on an article in the Eau Claire Leader-Telegram reporting on the committee's June 27 telephonic conference. The article states, in part:

> Based on all the charges read, [Clark County Sheriff Dallas] Neville voted to suspend Reedy because "his credibility is next to none or very minimal." Neville said it would be detrimental to the Stanley Police Department if Reedy continued working. [Bloomer Police Chief Wayne] Giest and [Colby-Abbotsford Police Chief Ronald] Gosse agreed with Neville and the vote to suspend him was unanimous.

Assuming for the purposes of argument that the portrayal in the newspaper report is accurate, we still do not accept the argument that Reedy's due process rights were violated. "[The objector] must overcome the presumption of honesty and integrity in those serving as adjudicators." *Kalt,* 145 Wis. 2d at 513–14, 427 N.W.2d at 412 (quoting *Withrow v. Larkin,* 421 U.S. 35, 47 (1975)). *Kalt* also states that "evaluations of credibility do not and cannot ipso facto be taken as indications of bias." *Id.* at 515, 427 N.W.2d at 413. However, *Kalt* dealt with credibility determinations made in unrelated proceedings. Here, Neville's comment dealt with the same proceeding. If the report was accurate, and if Neville had

607

been the sole decision-maker, due process concerns may have been implicated.

Neville was not the only committee member, however, and because of this we agree with the committee that *State ex rel. Richey v. Neenah Police & Fire Comm'n,* 48 Wis. 2d 575, 180 N.W.2d 743 (1970), controls. In *Richey,* our supreme court upheld a five-member commission's unanimous determination to terminate an officer, despite the fact that one of its members was allegedly biased. The court held that because there was no evidence in the record to indicate the other commission members were prejudiced, their decision would not be overturned. *Id.* at 584–85, 180 N.W.2d at 748–49.[2]

Reedy's only evidence concerning the bias of the committee's other members is that they were selected from a list prepared by Thornton. This alone does not overcome the presumption of the decision-maker's impartiality. Reedy was not denied due process because of the committee's make-up.

Reedy's next argument is that the committee lacked the power to terminate him. He contends that both sec. 62.13(5)(e), Stats., and city of Stanley Ordinance No. 158 (1972), give the committee the power to suspend *or* remove him. Because Reedy was suspended initially, he argues he cannot also be removed.

We disagree. Section 62.13(5)(e), Stats., provides in part: "If the board determines that the charges are sustained, the accused, by order of the board, may be suspended or reduced in rank, or suspended and reduced in rank, or removed, as the good of the service may require." The committee could only punish Reedy once,

[2]There is no requirement that the vote of the committee be unanimous. *See* sec. 62.13(6m)(a) and (5)(e), Stats.

after it upheld the charges against him. Reedy's initial suspension with pay was not penal in nature, and it was not a violation of sec. 62.13(5)(e) for Thornton to suspend Reedy with pay prior to a disposition of the charges.

Stanley Ordinance No. 158, Rule I, sec. 5, provides in part:

> The Chief of Police may at his discretion, punish by suspension of any member of the department proved guilty of the violation of any of the Rules and Regulations or may file written charges with the Board of Fire and Police Commissioners.

Again, Reedy argues that the committee exceeded its authority because he was both suspended and removed pursuant to written charges. We disagree that Reedy was ever "suspended" within the meaning of the Stanley ordinance. The ordinance provides for suspensions if an officer is "proved guilty" of rules violation. It contemplates penal suspensions, as does sec. 62.13(5)(e), Stats., rather than suspensions with pay. There is nothing in the ordinance that prevents suspensions with pay prior to a finding of a rules violation in addition to discipline imposed after the finding is made.

Reedy also contends that as a matter of law his actions do not constitute conduct unbecoming a police officer.[3] Whether Reedy's actions reach this standard is a question of law that we can review on certiorari. *See Hennekens,* 124 Wis. 2d at 424, 369 N.W.2d at 676. It does not require lengthy deliberations for us to conclude that shaking and striking Weber in the heat of argument

---

[3]Our supreme court has held that "conduct unbecoming an officer" sufficiently defines the basis upon which an officer can be disciplined. *See Richey,* 48 Wis. 2d at 582, 180 N.W.2d at 747.

constituted battery and was conduct unbecoming an officer.

Reedy's additional arguments are not within the scope of this court's certiorari review. His arguments that the committee dealt with him more harshly because of the publicity the case received and other extraneous reasons and punished him in excess of departmental norms are properly addressed on direct appeal. *See, e.g., Smits,* 104 Wis. 2d at 35–36, 310 N.W.2d at 611. Accordingly, we affirm the circuit court's judgment and order.

*By the Court.*—Judgment and order affirmed.