John A. BALCERZAK and Joseph T. Gabrish, Plaintiffs–Appellants,

v.

CITY OF MILWAUKEE, WISCONSIN, Police Department, City of Milwaukee, Philip Arreola, Chief, et al., Defendants–Appellees.

No. 98–1602.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 2, 1998.

Decided Dec. 15, 1998.

John F. Fuchs (argued), Fuchs, Snow & O'Connell, Milwaukee, WI, for Plaintiffs–Appellants.

Grant F. Langley, Rudolph M. Konrad (argued), Office of the City Atty., Milwaukee, WI, for Defendants–Appellees.

Before CUMMINGS, BAUER, and KANNE, Circuit Judges.

CUMMINGS, Circuit Judge.

Milwaukee police officers John Balcerzak and Joseph Gabrish were charged with numerous violations of Milwaukee Police Department regulations for failing to properly investigate the now-infamous Jeffrey Dahmer when they encountered him on the night of May 27, 1991 accompanied by one of his eventual victims, Konerak Sinthasomphone. Chief of Police Philip Arreola (the "Chief")

discharged Balcerzak and Gabrish. Under Wis. Stat. § 62.50(13), Balcerzak and Gabrish sought review of the discharge to the Milwaukee Board of Fire and Police Commissioners (the "Board"). Gabrish and Balcerzak pled guilty to one violation of Rule 4, § 2 of the Milwaukee Police Department Rules and Regulations for failing to familiarize themselves with police department responsibilities, apparently expecting to have their sanction reduced from discharge to suspension. Their expectations were confounded. The Chief sought to uphold his decision to discharge and presented to the Board the 15 or 16 different ways Balcerzak and Gabrish had violated Rule 4, § 2 in the officers' failure to investigate. The Board upheld the Chief's decision to discharge.

Balcerzak and Gabrish sought review in the two ways permitted in Wisconsin state courts. They filed a statutory appeal in the Circuit Court of Milwaukee County pursuant to Wis. Stat. § 62.50(20) contending that under the evidence presented the decision of the Board was unreasonable. They also sought review by a writ of certiorari, alleging the Board's decision denied them due process of law and that Rule 4, § 2 was unconstitutionally vague.

The two appeals were assigned to Judge Robert J. Parins, Reserve Circuit Judge. On the statutory appeal, decided in May 1994, Judge Parins found the penalty of discharge was unreasonable because the evidence before the Board showed merely negligent failure to properly investigate. After the Wisconsin Court of Appeals denied the Board's petition for a supervisory writ and the Wisconsin Supreme Court denied a petition for review, the Board rescinded its previous discharge order and imposed a sixty-day suspension instead. Thus, Balcerzak and Gabrish received the suspension they thought they bargained for and were subsequently reinstated as police officers. In June of 1996, the Board filed a motion to dismiss the writ of certiorari still pending before Judge Parins, which was granted in September. In his decision, Judge Parins found that no constitutional issues remained once the Board had imposed the reduced penalty in accordance with his May 1994 decision.

In July 1995, after the statutory review decision, but before the dismissal of the writ of certiorari, Balcerzak and Gabrish filed a § 1983 claim against the Board, the Chief, and a host of other defendants alleging multiple violations of the Constitution in the way Balcerzak and Gabrish were prosecuted and punished. In October 1997, the district court dismissed some of the claims and defendants, *Balcerzak v. City of Milwaukee*, 980 F.Supp. 983 (E.D.Wis.1997), a decision not on appeal here. This dismissal left only an equal protection claim against the Chief for his initial decision to discharge the plaintiffs and against the Board for ratifying this decision. The basis of these equal protection claims was an alleged racial motivation for the Chief's and the Board's decisions to discharge (both Balcerzak and Gabrish are white). The district court subsequently dismissed the equal protection claim on claim preclusion grounds. 993 F.Supp. 1213 (E.D.Wis.1998). We are concerned here only with this latter decision.

[1, 2] Under 28 U.S.C. § 1738, a federal court in a § 1983 action must give a state court judgment the same preclusive effect it would have in state court. *Migra v. Warren City School Dist.*, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed. 2d 56. Accordingly, we look to Wisconsin preclusion law, as the district court did, to determine whether Balcerzak's and Gabrish's equal protection claims are barred. We review the district court's grant of summary judgment de novo. *Campbell v. Towse*, 99 F.3d 820, 826 (7th Cir.1996).

[3, 4] An initial question is whether the Chief was in privity with the Board for claim preclusion purposes. Neither party disputes that the Board was a party to the Wisconsin state court proceedings to which we are asked to give preclusive effect. The Board was the defendant in the Wisconsin state court review of its decision to discharge Balcerzak and Gabrish. As noted above, however, we are concerned here only with the Chief's administrative decision to discharge, not his role as quasi-prosecutor. The suit against the Chief is in fact a suit against the Chief in his official capacity under Wisconsin law. *See Northern States Power Co. v. Bugher*, 189 Wis.2d 541, 525 N.W.2d 723, 728 (Wis.1995). As such, it bumps into the rule that "a city official sued in his official capaci-

ty is generally in privity with the municipality." *Conner v. Reinhard,* 847 F.2d 384, 394 (7th Cir.1988) (citing *Lee v. City of Peoria,* 685 F.2d 196, 199–200 n. 4 (7th Cir.1982)). This rule makes sense in the context of this case when one considers that the Chief's interest in upholding his initial decision to discharge was identical to that of the Board, the actual defendant in the state court proceeding. Hence, the Chief was in privity with the Board for claim preclusion purposes, and whatever preclusive effect we give to the state court proceedings will reach to the Chief as well.

■ Turning to the central question in this case, what preclusive effect does Wisconsin law give to state court review of an administrative discharge proceeding to a subsequent claim under § 1983 that the discharge was racially motivated? Or, in other words, had plaintiffs sued in Wisconsin state court instead of federal district court, would their action have been barred? The short answer is yes.

■ Wisconsin has adopted a transactional approach to claim preclusion. *See Northern States Power Co.,* 525 N.W.2d at 728 (1995). Under this approach, if a second suit arises from the same transaction, incident, or factual situation as an initial suit, *res judicata* will bar the second suit. It is indisputable that plaintiffs' § 1983 claim arises from the same factual situation as the suit in Wisconsin state court seeking review of the Board's decision to discharge.

■ Rather than argue that Wisconsin's transactional claim preclusion does not bar their suit, plaintiffs rely instead on the constitutional limitations on § 1738, arguing that the operation of Wisconsin law would deny them an opportunity to fully and fairly litigate their claims. There are due process limitations on when claim or issue preclusion could act as a bar in a § 1983 suit. Namely, if a litigant were denied a full and fair opportunity to litigate, subsequent relitigation would not be barred. *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 482, 102 S.Ct. 1883, 1898, 72 L.Ed.2d 262.

■ Plaintiffs first argue that they were denied a full and fair opportunity to litigate because Wisconsin state courts could not have heard the defense that they were un-

fairly targeted because of their race. Plaintiffs concede that Wisconsin state court review does reach whether the Board afforded them due process in ordering their discharge, *see, e.g., Krison v. Nehls,* 767 F.2d 344, 348 (7th Cir.1985), but argue that in Wisconsin, the courts may not consider whether the Board based its decision on their race. This strikes us as fanciful. In Wisconsin, a suit for review by certiorari may consider (1) whether the Board acted within its jurisdiction, (2) whether the Board proceeded on a correct theory of law, and (3) whether the Board's action was arbitrary, oppressive, or unreasonable under the evidence, and represented its will rather than its judgment. *Owens v. Board of Police and Fire Comm'rs of Beloit,* 122 Wis.2d 449, 362 N.W.2d 171, 172 (Wis.Ct.App.1984). Surely, if a police board were to discharge officers on the basis of their race, it would not be acting under a correct theory of law and would be acting arbitrarily.

■ In fact, Wisconsin courts have considered constitutional claims in both statutory and certiorari review. In *Kalt v. Board of Fire and Police Comm'rs for the City of Milwaukee,* 145 Wis.2d 504, 427 N.W.2d 408 (Wis.Ct.App.1988), a certiorari review case, the Wisconsin appellate court considered both a vagueness challenge to the Milwaukee police regulations and a claim that the Board of Fire and Police Commissioners for the City of Milwaukee was biased in its decision. Though the bias alleged in that case was not racial, nothing in that opinion suggests that Wisconsin courts would refuse to hear claims of racial bias. *See also Reedy v. Law Enforcement Disciplinary Committee,* 156 Wis.2d 600, 457 N.W.2d 505, 508 (Wis.Ct. App.1990) (allegations of biased decisionmaker proper on certiorari review); *Hennekens v. City of River Falls Police & Fire Comm'n,* 124 Wis.2d 413, 369 N.W.2d 670, 675 (Wis. 1984) (same). Constitutional claims may also be raised in Wisconsin by statutory review under the theory that a decision taken in violation of due process would be unreasonable. As the Wisconsin Supreme Court wrote in *Slawinski v. Milwaukee City Fire and Police Comm'n,* 212 Wis.2d 777, 569 N.W.2d 740, "[b]ecause due process is always a concern in any case where something has

been taken away from someone by a government entity, it makes sense that a court charged with determining whether a decision is 'reasonable' would consider whether the police officer had been afforded due process." *Id.* at 753.

Plaintiffs argue that although Wisconsin courts may consider due process challenges to a board's decision, they may not consider equal protection challenges and hence their § 1983 claim is not barred. Wisconsin courts are limited to review of the record at the administrative proceeding, plaintiffs argue, and proof of racial disparities in administrative sanctions would require extrinsic evidence about punishments in similar cases. True enough, but what plaintiffs miss is that they pled guilty to one violation of department regulations to gain dismissal of other charges. Plaintiffs were unable to proffer evidence before the Board which would show the alleged racial disparity because their plea apparently deprived them of a full evidentiary hearing. We say "apparently" because it is not clear from the record before us that plaintiffs could not have offered such evidence in the penalty phase of the Board hearing.

This case is therefore unlike the situation in *Jones v. City of Alton, Illinois,* 757 F.2d 878 (7th Cir.1985), where a black police officer did attempt to introduce evidence before the civil service commission and the Illinois state courts that punishments for white officers accused of similar misconduct were comparably lighter. In *Jones,* both the commission and the Illinois courts dismissed such evidence as irrelevant. As a consequence, we held that the plaintiff had not been afforded a full and fair opportunity to litigate the issue in state court, and allowed his § 1983 suit to proceed. *Id.* at 886. Unlike the plaintiff in *Jones,* plaintiffs in this case pled guilty and by so doing foreclosed their chances to present evidence on their constitutional defense at least at the initial hearing before the Board.

■ Plaintiffs argue that even if they could have raised a constitutional defense in Wisconsin state courts, the remedy in state court, reversal or modification of the Board's decision, is not the same as the remedy they seek under § 1983, namely, money damages, and hence we should not afford the Wisconsin state court judgment claim preclusive effect. This argument, if accepted, would undercut claim preclusion in every case where a constitutional issue was posed as a defense to a civil service commission or police board action. It would have led to different results in both *Lolling v. Patterson,* 966 F.2d 230 (7th Cir.1992), and *Pirela v. Village of North Aurora,* 935 F.2d 909 (7th Cir.1991), among many others.

Plaintiffs argue that even if we are to accord the Wisconsin state court judgment preclusive effect, their "Equal Protection claims against the Board, based on the Board's decision to withdraw the plea agreement for racially motivated reasons are separate and distinct claims" which should be allowed to go forward. We fail to see how these claims are either separate or distinct.

The proper course for plaintiffs in this case would have been to seek to introduce evidence before the Board concerning alleged racial disparities in punishment. If the Board and Wisconsin state courts refused to hear such evidence, we might be in the situation posed by *Jones* above. If the Wisconsin state courts were to find the Board's decision to discharge to be based upon improper racial bias, then that determination would likely have issue preclusive effect in a subsequent § 1983 suit against the Board. *See, e.g., Kremer,* 456 U.S. at 478, 102 S.Ct. 1883; *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308. As it is, plaintiffs failed to present evidence of racial bias to the Board or Wisconsin state courts and have failed here to show that Wisconsin courts would not have considered such evidence. The judgment of the district court is AFFIRMED.