Joseph F. SLAWINSKI, Plaintiff-Respondent,†

v.

MILWAUKEE CITY FIRE & POLICE COMMISSION,
Defendant-Appellant.†

Joseph F. SLAWINSKI, Plaintiff-Respondent,†

v.

FIRE & POLICE COMMISSIONERS BOARD, Defendant-
Appellant. [Case No. 96–1347]†

STATE of Wisconsin ex rel. City of Milwaukee Fire and
Police Commission, Petitioner,

v.

CIRCUIT COURT FOR MILWAUKEE COUNTY , the Honorable
Patrick J. Madden, presiding and Joseph F.
Slawinski, Respondents. [Case No. 96–1524–W]

Court of Appeals

*Nos. 96–1347, 96–1524–W. Oral argument May 28,
1997.—Decided August 12, 1997.*

(Also reported in 569 N.W.2d 740.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Grant F. Langley*, city attorney, and *Gregg C. Hagopian*, assistant city attorney, of Milwaukee. There was oral argument by *Gregg C. Hagopian*.

On behalf of the plaintiff-respondent Joseph F. Slawinski, the cause was submitted on the brief of *Gerald P. Boyle, Bridget E. Boyle*, and *Jonathan Smith*, of *Boyle, Boyle & Smith, S.C.*, of Milwaukee. There was oral argument by *Bridget E. Boyle*.

On behalf of the respondents Circuit Court for Milwaukee County and the Honorable Patrick J. Madden, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Jennifer Sloan Lattis*, assistant attorney general. There was oral argument by *Jennifer Sloan Lattis*.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

SCHUDSON, J. The City of Milwaukee Fire and Police Commission and the City of Milwaukee Fire and Police Commissioners Board (collectively, the "FPC") petition this court for a supervisory writ ordering the State of Wisconsin Circuit Court for Milwaukee County either to affirm the Board's demotion of Joseph F. Slawinski, from City of Milwaukee Inspector of Police to Lieutenant of Police, or to apply the statutory review standards in what the FPC considers the required manner. The FPC argues that the circuit court, in reviewing the Board's decision demoting Slawinski, exceeded its review authority under § 62.50(20) – (22), STATS. The FPC maintains that instead of properly confining its review to the "reasonableness" of the decision, the circuit court addressed legal and constitutional issues that Slawinski had waived and that were beyond its proper scope of review.

We conclude that the FPC has failed to establish that the circuit court exceeded its authority under § 62.50(21), STATS., to determine whether, "under the evidence was the decision of the board reasonable." We also conclude, however, that the circuit court failed to provide the parties an opportunity to develop a factual record before the Board and offer legal argument before the circuit court on the constitutional issues forming the basis for its (the circuit court's) decision. We dismiss the appeal, grant the petition for a supervisory writ, reverse the judgment and remand with directions for further proceedings.

## I. FACTUAL BACKGROUND

The factual background relevant to resolution of the issues before this court is undisputed. Beginning in 1965, Slawinski worked his way through the ranks of the Milwaukee Police Department and, in 1985, he was

promoted to the position of Inspector of Police. He held that position into the 1990s when he encountered certain problems in the department and apparent conflicts with Chief of Police Philip Arreola. As summarized by the circuit court decision:

On Feb. 16, 1992, Slawinski was reassigned by the Chief to Field Operations, working nights. This position was a Deputy Inspector's position, although Slawinski's title and pay did not change. Slawinski believed that the reason for the reassignment was because he and the Chief "didn't get along any more," and he stated that he couldn't "honestly say [why the reassignment occurred] other than the fact that if I disagreed or if there was a policy and I said it was wrong—I really don't know." The Chief . . . said the reason he transferred Slawinski was because Slawinski had indicated to him that he wanted to run the Patrol Bureau, and the Chief did not feel he had adequate experience, so he "presented him with this assignment to work as the Night Inspector,. to develop the patrol experience." *Arreola did not construe the move as a disciplinary action.* He was aware, however, through hearsay and Slawinski's own comments, that Slawinski was critical of his colleagues and peers, the department, prior chiefs, and the chief himself, and Arreola had previously "made a statement to him that his worst enemy was himself, that if he would just keep quiet and do his job, that he would be further ahead."

The Chief testified that, while Slawinski was assigned to the Patrol Bureau as Night Inspector it was brought to his "attention that he was making comments and acting not in accord with the best interests of the department, and to be quite frank[ ], I assigned him to the Chief's staff pending some

review as to where I could put him to fulfill his responsibilities."

That assignment to the Chief's staff came on August 28, 1992. When Slawinski was given the order, he was sitting in his office. . . . Slawinski testified that [when he was given the order] he started laughing, and said "Wait until the troops see this. They're going to think we're going to have to check our guns at the door to prevent a shooting."

(Emphasis in circuit court decision; bracketed words added.)

A police stenographer who heard Slawinski reported his comment[1] to another police inspector who reported the incident to the Assistant Chief of Police who told Chief Arreola. Chief Arreola then ordered Slawinski to his (the Chief's) office and confronted him with the information he had received. Slawinski acknowledged making a comment to that effect, and the Chief advised him that he was suspended pending an investigation.

Following an investigation by the department's Internal Affairs Division, Slawinski was demoted and

---

[1] The stenographer testified that she remembered the comment as, "We better leave our guns at home or we might end up shooting each other."

six charges were filed with the Board:[2] As to Rule 4, Section 3:[3]

> Count #1: That on August 28, 1992, Joseph F. SLAWINSKI as an Inspector of Police was on duty and made comments which were construed to be a threat to the Chief. Furthermore, said comments ... caused the Chief, an Assistant Chief, an Inspector

[2] Section 62.50(1), STATS., provides, in part, that "[i]n all 1st class cities, however incorporated, there shall be a *board* of fire and police *commissioners*. . . ." (Emphasis added.) Not surprisingly, therefore, much of the case law in this area refers to "the Board" and "the Commission" interchangeably. For the most part, the circuit court in this case referred to "the commission." We, however, will refer to "the Board" because most of the case law does so and because we will be examining, under § 62.50(21), the circuit court's analysis of whether "under the evidence was the decision of the board reasonable."

[3] Milwaukee Police Department Rule 4, Section 3 states:

> Members of the police force shall, at all times within the boundaries of the City, preserve the public peace, prevent crime, detect and arrest violators of the law, and protect life and property. Police Department members should not normally convey citizens in Department vehicles except on official Department business. However, when in the course of their duties members of the police force come upon a victim of crime or a person who in their judgment requires assistance for security reasons such person may be transported to a secure location or the nearest police facility. When such action is deemed desirable or necessary the Department member shall, prior to taking such action, contact and notify a supervisor or shift commander of such action. They shall conform to, abide by and enforce all the criminal laws of the State of Wisconsin and the ordinances of the City of Milwaukee of which the Department must take cognizance and they shall render their services to the City with zeal, courage, discretion, and fidelity. *They shall direct and coordinate their efforts in such a manner as will tend to establish and maintain the highest standards of efficiency.* Members shall also observe the laws and ordinances in effect in any other jurisdiction while within such jurisdiction.

(Emphasis added.)

and a Captain to put aside their regular duties and direct their attention to SLAWINSKI and his comments thereby causing a disruption to the orderly function of the department.

Count #2: That between August 26 and 28, 1992, Joseph F. SLAWINSKI'S duty hours as an Inspector of Police were between 8:00 A.M. and 5:00 P.M. That during his tour of duty on these dates, he repeatedly complained to another supervisor occupying his office. That . . . SLAWINSKI'S constant complaining about the operation of the Milwaukee Police Department disrupted this supervisor to the point he felt it was necessary to leave the office and perform his work elsewhere; thus causing a disruption to the orderly function of the Department.

Count #3: That between September and December 1991, while Joseph F. SLAWINSKI was an attendee as an Inspector of Police at an Executive Development Training Seminar sponsored by the International Association of Chiefs of Police (IACP), he exhibited a negative attitude. Furthermore, his argumentative and disruptive behavior was detrimental to the success of the seminar and negatively impacted on the image of the Milwaukee Police Department.

As to Rule 4, Section 17:[4]

---

[4] Milwaukee Police Department Rule 4, Section 17 states:

All members of the police force are equally responsible with members of the Traffic Bureau for the enforcement of the traffic laws and ordinances. The special delegation of the enforcement of certain laws and ordinances to particular divisions or bureaus of the Department does not relieve members of other divisions or bureaus from the responsibility of taking prompt and proper police action relative to violations of any laws or ordinances observed by them or coming to their attention, and of which the Department takes cognizance.

Count #1 [Count #4 before the commission]: That on August 3, 1992, Joseph F. SLAWINSKI as an Inspector of Police was directed to attend a Block Watch Meeting . . . to address citizen concerns in regard to poor police response to recurring disturbances involving cars with loud music and noise complaints. Furthermore, when . . . SLAWINSKI was leaving this meeting, he was cognizant of a disturbance and failed to take proper police action upon witnessing a violation of City Ordinances.

As to Rule 4, Section 26:[5]

Count #1 [Count #5 before the commission]: That between July 25 and August 5, 1992, while on duty and acting in the capacity as Field Inspector, Joseph F. SLAWINSKI made the following comment to a supervisor while referring to Chief ARREOLA, "He's an idiot."

Count #2 [Count #6 before the commission]: That between August 26 and August 28, 1992, while on duty, as an Inspector of Police, Joseph F. SLAWINSKI made negative comments to a Captain criticizing Chief ARREOLA's recommendation of Alfonso GRAHAM for the position of Assistant Chief of Police. Additionally, sometime after January 26, 1992, . . . SLAWINSKI made derogatory comments to another Captain about . . . GRAHAM.

---

[5] Milwaukee Police Department Rule 4, Section 26 states:

Members of the Department shall treat their superior officers with respect and their demeanor toward their associates in the Department shall be courteous and considerate, guarding themselves against envy, jealousy, or other unfriendly feeling; and refrain from all communications to their discredit, except to their superior officers whom it is their duty to inform of every neglect or disobedience of orders that may come to their knowledge.

(Footnotes added.)

The Board concluded that the evidence failed to substantiate counts 4 and 5 and dismissed them. The Board also concluded, however, that the evidence proved the other four counts, and upheld Slawinski's demotion, declaring:

> In attempting to reach an appropriate disposition, this Board must determine what "the good of the service requires". Section 62.50(17) Wis. Stats. This panel concludes that former Inspector Joseph F. Slawinski behaved in such a manner that his conduct, on numerous occasions, interfered with the efficient operation of the Milwaukee Police Department. Despite an attempt by another member of the command staff to encourage him to change his behavior, Slawinski persisted in criticizing Department programs and personnel to a point where it negatively impacted Department operations. Despite at least one discussion with Chief of Police Philip Arreola regarding Slawinski's role in the Department, Slawinski continued to distance himself from Department policies, procedures and command staff. Joseph Slawinski's repeated criticism became so severe that one fellow command officer testified that he had never heard anyone so obsessed with criticizing command officers and the Department. What has been described to us is not "constructive criticism" as Appellant would have us believe, but a pattern of conduct which this trier of fact views as destructive to the effective day to day operation of the Milwaukee Police Department. An example of this is the centralized booking procedure where, after the procedure was implemented, Appellant Slawinski advised subordinate command officers that the procedure placed them at risk of legal liability. Slawinski's actions caused great concern

among these command officers and undermined the effective implementation of the procedure. Such action is intolerable and unbefitting of a person in Slawinski's position in the Department.

Chief Arreola testified regarding a concept he referred to as "the hierarchy of command", noting that it includes the principles of delegation of responsibility, unity of command and span of control. We specifically note the importance of unity of command, and we agree that it carries with it the necessity of a common goal or vision to be shared by the Chief and his command staff. Once goals are established all department members, and especially command staff, *must* put forth every effort to see that these goals are achieved. The community has a right to expect an effective and coordinated response to some of life's most serious needs and concerns, and unity of command is absolutely and unquestionably essential in order to meet these expectations.

As we have heard during these hearings, command officers are privy to discussions regarding goals and policies, and the effective operation of the Department requires that they support those goals and policies. Progress takes place as a result of members of the command staff working together toward a common goal. All members, and especially command officers, are expected to participate in this process for the betterment of the department and the community it serves. Appellant Slawinski was given more than adequate notice of the inappropriateness of his course of conduct. His claimed inability to understand the wrongfulness of his actions is a sad indication of his lack of insight, and renders him incapable of serving as a member of the command staff of the Milwaukee Police Department.

Command officers in the Milwaukee Police Department are those holding the rank of Captain and above. By demoting Joseph Slawinski to the position of Lieutenant, Chief Arreola has taken the necessary step of removing him from the command staff. This panel is unanimous in its belief that the good of the service requires that Joseph F. Slawinski be demoted to the rank of Lieutenant of Police.

Slawinski challenged the decision in the circuit court, claiming that the Board proceeded on an incorrect legal theory, exceeded its jurisdiction, and violated his due process rights by: (1) prosecuting him for conduct equivalent to that engaged in by others who were not disciplined; (2) failing to make findings sufficient to support a conclusion that he must be demoted; (3) acting contrary to law by misconstruing and misapplying departmental rules to the facts; and (4) failing to act as a fair and impartial decision-maker as required by law. Slawinski brought his claims in two separate actions: by statutory appeal pursuant to § 62.50(20), STATS., and by common law writ of *certiorari*. The circuit court eventually consolidated the two actions and issued a written decision disposing of both.

## II. CIRCUIT COURT DECISION

In its written decision, the circuit court summarized Slawinski's theory:

> The essence of Slawinski's argument . . . is that the Chief wanted to get rid of [him], and the [Internal Affairs Division] investigation was meant to find whatever dirty laundry it could come up with in order to do so. He points to the "absurdity" of the two dismissed charges as evidence of this. He

argues that each charge itself was unreasonable, and that the commission did not act reasonably in substantiating the charges.

The circuit court interpreted Slawinski's claims as challenges to the *reasonableness* of the Board's actions, and broadly defined its authority to review the *reasonableness* of the Board's actions:

> The certiorari allegations of failure of due process are argued in [Slawinski's] briefs in a point by point argument that Slawinski was denied due process and it was *unreasonable as a matter of law* for the commission to uphold each charge and impose the discipline that it did. Because the court must examine the commission's action for each charge and determine *whether it was reasonable,* even if it must presume that the commission acted according to law when it made its finding, it would be error to fail to correct errors of law that it identifies.

(Emphasis added.) The circuit court's written decision then extensively discussed Slawinski's claims and concluded that the Board had committed errors of law in several respects.

## A. Counts 1–3: Vagueness of Rule 4, Section 3

The Board had upheld three charges under Rule 4, Section 3—the first two charges for Slawinski's actions "causing a disruption and hindering the efficient operation of the Police Department," and the third charge for actions "hindering . . . the efficient operation of the Police Department." The circuit court concluded "that the [Milwaukee Police Department] rule setting forth a standard simply of 'efficiency' is unconstitutionally vague." The court explained that "the rules which specifically proscribed much of the

conduct [Slawinski] is accused of were suspended by the former chief" in 1984. These suspended "gag rules," the court further explained, "could result in the 'destruction of the limited right of the policeman, as a public employee with unique characteristics, to speak on matters concerning his employment.'" (quoting *Bence v. Breier*, 501 F.2d 1185, 1190 (7th Cir. 1974), *cert. denied*, 419 U.S. 1121 (1975)). Nevertheless, the circuit court concluded, in Slawinski's case "[t]he rule which the Department is using [instead of the 'gag rules'] is a portion of a larger rule, and is taken completely out of context." The court explained:

> The entire Rule 4, Section 3 deals with the use of Department vehicles, and the responsibility of the officers to abide by and enforce the laws of the state and the ordinances of the city. It directs the officers to do their jobs with zeal, to maintain the highest standards of efficiency, and then returns to a command to observe the laws and ordinances of other jurisdictions. Within its context, the segments of this rule can be measured objectively, i.e., whether an officer used a department vehicle improperly, whether an officer failed to conform his conduct to the laws and ordinances, etc. Taken out of context, the segment of the rule which was used here has no objective definition. No standard of efficiency was presented to the commission. No standard of the requisite level of disruption to merit discipline was put forth.

The court then rejected the Board's statement that Slawinski had been "given more than adequate notice of the inappropriateness of his course of conduct." The court summarized the testimony of Chief Arreola and Assistant Chief Graham regarding their communication with Slawinski and concluded that the

testimony provided no notice that Slawinski's " 'complaining' was considered misconduct and would result in discipline." The court declared: "A search of the record for notice from his superiors that his conduct was in violation of a rule and that his conduct would result in disciplinary action reveals that none was given." Thus, the court concluded:

> It can hardly be claimed that this rule, or these warnings, put Slawinski on notice that his criticism of the Department or the Chief was disruptive of efficiency, or that some level of criticism was tolerable but another was not. The rule was capable of only subjective interpretation. The rule itself, as it is applied here, violates the "rough idea of fairness," and is unconstitutionally vague.

(quoting *Bence*, 501 F.2d at 1189).

The circuit court thus disposed of counts 1–3 on the due process bases of notice and vagueness. Its decision, however, also "address[ed] each of the substantiated charges in the interest of completeness," elaborating its rationale and, on some counts, concluding that the Board had violated Slawinski's due process rights in other respects as well.

## B. Count 1: Threat to Chief Arreola

The Board had found that Slawinski had threatened Chief Arreola "thereby causing a disruption and hindering the efficient operation of the Police Department." The circuit court additionally concluded, however, that the Board erred by "fail[ing] to recognize that Chief Arreola violated Slawinski's statutory rights when he interrogated him without notifying him that the interrogation could result in discipline."

The circuit court cited Chief Arreola's testimony before the Board, describing the critical confrontation with Slawinski:

> "This is what I've been told. Did you say this?" and at the time he said "No." I said "Did you say something like that?" He said "Yes." And I waited and I waited for an explanation. I waited for some kind of perhaps discussion as to why a statement like this would be made, and did I consider it a threat? Yes I did. And when he made no explanation, I suspended him on the spot.

The circuit court also summarized additional testimony of Chief Arreola that led it to conclude "at the very least, that [Chief Arreola] contemplated disciplinary action before he called Slawinski into his office on August 28, 1992."

The Board had found:

> When called into the Chief's office[,] Slawinski acknowledged making the statement but gave no explanation. If Slawinski actually made the statement in jest and felt he was misunderstood, he failed to take this opportunity to clear up the misunderstanding. His silence led the Chief to reasonably conclude that the threat could be real. Appropriate precautionary measures were taken which, by their very nature, disrupted the operation of the Police Department.

The circuit court explained, however, that although the Chief has statutory authority to discharge or suspend an officer, that authority can only be exercised under § 164.02, STATS., which requires, *inter alia*, that "[t]he law enforcement officer under investigation shall be informed of the nature of the investigation prior to any interrogation," § 164.02(1)(a), and further provides

that "[e]vidence obtained during the course of any interrogation not conducted in accordance with sub. (1) may not be utilized in any subsequent disciplinary proceeding against the law enforcement officer." Section 164.02(2). Thus, the court concluded, the Chief's "failure to warn Slawinski of possible discipline before he questioned him" violated § 164.02(2).

The circuit court also rejected the Board's conclusion that, as a result of Slawinski's threat, the department took "appropriate precautionary measures" which, by their nature, disrupted the department. Focusing on the "reasonableness" of the department's response, the circuit court explained:

> The enormity of Slawinski's offense was gauged by the reaction to an off-hand comment made in a private conversation, to someone who had previously confided in him when she had work-related problems. [The stenographer's] initial reaction was that Slawinski's comment was not a threat, but because of a recent City Hall murder, she thought she had better tell someone. Caution must be exercised when the enormity of an offense is gauged by departmental response to it when the response is in reaction to matters outside the control of the alleged offender. *See Oddsen v. Board of Fire & Police Comm'rs*, 108 Wis. 2d 143, 148 n.1 (1982). There was no evidence presented that Slawinski had ever been violent, or that the Chief had cause to believe that he would be, only that they did not get along. Under the evidence presented, the commission's finding was both unreasonable and an error of law.

## C. Count 2: Disruption of Office

The Board had found that Slawinski's repeated complaining about the department had disrupted the operation of the department by causing the police captain with whom he shared an office to find another work location. The circuit court additionally concluded, however, that although the evidence supported it, the Board's finding was "an error of law because Slawinski did not have adequate notice that his conduct could result in discipline."

## D. Count 3: The Seminar

The Board had found that Slawinski was "argumentative and disruptive and interfered with the conduct of [an Executive Development Training Seminar], thereby necessitating his removal from the seminar and hindering the efficient operation" of the department. Although not disputing the factual basis on which the Board had based its finding, the circuit court declared that "this charge is in direct violation of Slawinski's right to due process and can only serve to chill his right to speak out as to matters of departmental and public concern." Slawinski's "specific acts," the court concluded, "fall squarely within the boundaries" of the suspended "gag rules."

## E. Count 6: Comments about Assistant Chief Graham

The Board had found that Slawinski had made negative comments about Assistant Chief Graham, thereby failing to treat a superior officer with respect, in violation of Rule 4, Section 26. With some slight modification, the circuit court upheld the Board's finding on this count.

## F. Circuit Court Disposition

The circuit court concluded:

> No evidence was presented that Slawinski failed to do his job, failed to carry out an order, or was insubordinate. He did not violate any laws or ordinances. The commission never even acknowledged Slawinski's twenty-nine years of service, his accomplishments or contributions, or his role in the modernization of the department. It saw only that he did not understand that his criticism was construed by others as damaging to the efficiency of the department and the unity of command. The commission failed to recognize that those who were in the position to correct his behavior did not deal with it realistically, but waited until the incident that became the "straw that broke the camel's back" occurred, then blindsided him with an intensive investigation and charges that violated his right to due process of law.
>
> Under the evidence presented, both as a matter of law and as a matter of the reflection of its will and not its judgment, the commission acted unreasonably in imposing the reduction of Slawinski's rank from Inspector to Lieutenant. This discipline was too severe under the charges the commission sustained.

The court remanded the case to the Board for: (1) dismissal of counts 1–3; (2) amendment of count 6; (3) reconsideration of the appropriate discipline on count 6 with further direction that the discipline not exceed a thirty-day suspension without pay; and (4) reinstatement to the inspector position with back pay and benefits.

## III. THE FPC APPEAL AND PETITION

### A. Procedural History and Definition of Issues

As noted, after the Board demoted him Slawinski challenged the demotion before the circuit court in two separate actions: a statutory appeal pursuant to § 62.50(20), STATS., and a common law petition for a writ of *certiorari*. The circuit court consolidated the actions and issued one written decision drawing no distinction between the two actions and disposing of both.

The FPC then petitioned for a supervisory writ challenging the circuit court's decision on Slawinski's statutory appeal, and also appealed the circuit court's decision on Slawinski's *certiorari* action. On June 10, 1996, this court granted the FPC's request to consolidate its petition and its appeal. This court's order noted that the FPC "contends that, even though it believes the trial court exceeded its authority, it has no ability to seek review of the trial court's action by appeal."

Similarly, although the FPC's brief to this court reiterates that it "*is appealing* on the Writ Action, *and seeking a supervisory writ* on the Statutory Appeal," the brief goes on to explain that "[i]f the Appellate Court does not grant the FPC's petition: (1) the FPC's appeal rights on the Writ Prongs will be meaningless because, if the Trial Court's . . . conclusions on the Statutory Appeal prongs are allowed to stand, the Trial Court Decision will stand. . . ."[6]

---

[6] At times the FPC merges its challenges to the circuit court's decision on both Slawinski's statutory circuit court appeal and his *certiorari* circuit court action. For example, in its brief to this court, the FPC argues:

In the June 10, 1996 order, this court implicitly agreed and, consequently, framed the issues of the consolidated appeal and petition as: (1) whether "the circuit court exceed[ed] the limits of its *statutory* review powers" under § 62.50(21), STATS., (emphasis added); and (2) if so, whether a circuit court decision exceeding its statutory review powers "constitute[s] a violation of a positive and plain legal duty such that a supervisory writ may be granted to permit this court's review of the circuit court's decision."

Therefore, in this case we do not address any arguments regarding this court's authority to entertain an appeal of the *certiorari* action. Instead, given the apparent agreement of the parties that this court properly may reach the merits of their dispute by considering not the appeal, but rather, the petition for

> [W]hen the Trial Court exceeds the limits of its review powers (whether Statutory Review or Writ of Certiorari Review), *or* when it fails to presume in FPC's favor, *or* when it fails to consider facts in the record, that is a violation of a positive and plain legal duty allowing a supervisory writ to be granted to permit Appellate Court Review.

At other times, however, the FPC still seems to separate its challenges according to the distinct areas of circuit court review. For example, the FPC's brief also contends:

> The Trial Court should have simply reviewed the briefs along with the record filed by the FPC to determine whether: *under the writ action* the FPC kept within its jurisdiction, and acted according to law, and, *under the statutory appeal action* the FPC's Decision was reasonable given the evidence and represented FPC judgment rather than will.

In any event, the FPC argues that a supervisory writ is appropriate because, it maintains, the circuit court violated a positive and plain legal duty by exceeding its jurisdiction, raising issues Slawinski waived, deciding waived issues without any input from the parties, failing to presume in the FPC's favor, and failing to consider facts in the record.

a supervisory writ, we will consider the FPC's claim that the circuit court exceeded its statutory authority within that latter legal framework.

## B. Circuit Court Statutory Review Authority

■

A discharged, suspended, or demoted officer or member of a police department may bring an action in the circuit court "to review the order" of a board of fire and police commissioners. Section 62.50(20), STATS. The circuit court must then provide a trial without a jury and, "[i]n determining the question of fact presented, the court shall be limited in the review thereof to the question: 'Under the evidence was the decision of the board reasonable?' " Section 62.50(21), STATS.

The FPC argues that the circuit court violated plain and positive duties by: (1) *sua sponte* searching the Board hearing record for errors; (2) *sua sponte* addressing waived issues including constitutional ones; (3) failing to review the hearing record and ignoring certain facts of record; and (4) failing to presume that the Board: (a) acted according to law; (b) rendered a correct decision; (c) rendered a fair, impartial, and good faith decision; (d) acted in accordance with its authority; (e) acted in a manner that, under a reasonable view of the evidence, is supportable; (f) acted based on constitutional rules; and (g) acted properly in determining the credibility of witnesses. The FPC also argues that the circuit court violated its due process rights by deciding issues not raised before the Board without remanding the case for input from the parties.

## IV. SUPERVISORY WRIT

### A. Criteria and Standards

This court has articulated our discretionary role in reviewing a petition for a supervisory writ, and summarized the criteria we consider:

> Whether or not to issue a supervisory writ requires us as the court of original jurisdiction to exercise our discretion. The issuance of a writ is controlled by equitable principles and, in our discretion, we can consider the rights of the public and third parties.
>
> The petition for a writ of supervision is not a substitute for an appeal. Because the petition invokes our supervisory authority, the writ is considered an extraordinary and drastic remedy that is to be issued only upon some grievous exigency. The petition for a supervisory writ will not be issued unless: (1) an appeal is an utterly inadequate remedy; (2) the duty of the circuit court is *plain*; (3) its refusal to act within the line of such duty or its intent to act in violation of such duty is *clear*; (4) the results of the circuit court's action must not only be prejudicial but must involve extraordinary hardship; and, (5) the request for relief was made promptly and speedily.

*State ex rel. Dressler v. Circuit Court*, 163 Wis. 2d 622, 630, 472 N.W.2d 532, 536 (Ct. App. 1991) (citations omitted). In the instant case, although Slawinski briefly addresses each criterion, he offers little to counter FPC arguments that the first, fourth, and fifth criteria have been satisfied in this case. Indeed, the Attorney General, on behalf of the circuit court, concedes that the first, fourth, and fifth criteria have

been satisfied. Therefore, focusing on the second and third criteria, the issue is whether the circuit court clearly violated a plain duty.

### B. FPC Challenges to the Circuit Court's Analysis of the Record

The FPC offers numerous arguments attacking the circuit court's appraisal of the record before the Board. The FPC contends that the circuit court clearly violated its plain duty by failing to review the record or by ignoring the facts of record, and by failing to presume that the Board acted properly in determining the credibility of witnesses. We disagree.

Under § 62.50(21), STATS., once an officer requests circuit court review of a board's decision, the board must "certify to the clerk of the circuit court . . . all charges, testimony, and everything relative to the trial and discharge, suspension or reduction of the member." The circuit court then reviews the information and determines whether, "under the evidence," the board's decision was "reasonable." Section 62.50(21). The statute thus requires the circuit court to determine whether the evidence before the board supports its decision. *See* § 62.50(17) ("Within 3 days after hearing the matter the board shall, by a majority vote of its members, determine whether by a preponderance of the evidence the charges are sustained.").

Clearly, in this case, the circuit court did so. Consistent with § 62.50(21), STATS., the circuit court decision, including many of the extensive portions we have quoted, reflects the circuit court's factually-based determination of whether "under the evidence" the Board's decision was reasonable. Indeed, the FPC's

argument that the circuit court failed to consider or ignored the record is ironic given that the circuit court concluded, among other things, that on counts two, three, and six, the evidence *did* support the Board's findings.

Although often framed in jurisdictional terms, these FPC arguments quickly fade into little more than the FPC's differing assessment of the facts before the Board, i.e., of whether, "under the evidence was the decision of the board reasonable." Section 62.50(21), STATS. Thus, we conclude that the FPC has failed to establish that the circuit court clearly violated its plain duty to review the record and determine "under the evidence" whether the Board's decision was reasonable. *See* § 62.50(21).

## C. FPC Challenges to the Circuit Court's Due Process Determinations

The FPC's real quarrel with the circuit court decision is that it largely upends the Board's decision *despite* finding that the evidence supported three of the counts. The FPC contends that the circuit court did so by stretching beyond the record to reach constitutional issues Slawinski never raised and the parties never litigated. Thus, the FPC argues, the circuit court clearly violated its plain duties to: confine its review to the record; refrain from deciding constitutional issues that, it maintains, Slawinski waived; and refrain from reviewing Slawinski's demotion based on issues it raised, *sua sponte*, without "even remand[ing] to seek party input."

We conclude that the FPC has failed to establish that the circuit court exceeded its jurisdiction by considering constitutional due process issues as part of its overall evaluation of "reasonableness." We also

conclude, however, that the circuit court erred in basing its decision on those issues without first affording the parties the opportunity to develop a factual record before the Board and offer argument before the circuit court.

As we have explained, the circuit court's primary basis for reversing the Board derived from its determination that the first three counts charged violations of the Rule 4, Section 3 standard that was unconstitutionally vague, and its secondary basis related to its determination that Slawinski's First and Fifth Amendment rights were implicated and violated. The FPC argues that because Slawinski never complained that the standard was vague or inapplicable and never claimed that he had been denied due process on this or any other constitutional basis, he waived these issues and, therefore, the circuit court exceeded its authority by reaching them.

Initially, the parties disagree not only about whether the circuit court, *sua sponte*, could address due process issues never raised, but also about whether, in fact, Slawinski ever raised due process issues. The FPC argues that, aside from hoisting the umbrella of "due process" language over virtually all his claims, Slawinski provided no specific challenge to any of the due process violations the circuit court found. Slawinski implicitly counters that he did present due process arguments and that, indeed, his due process umbrella covers more than enough to allow the circuit court to address due process issues, particularly when doing so while making a determination under a standard as broad as "reasonableness."[7]

---

[7] Indeed, the FPC agrees that "reasonableness" may encompass due process issues. In its reply brief to this court, FP

The record reveals some slight basis for Slawinski's belief that he raised due process issues. First, in his testimony before the Board, Slawinski, responding to his lawyer's questions, testified:

Q: Let us assume, based upon your knowledge and experience as a leader of troops over these many years, that something takes place that is per se wrong or a dumb idea, or not in the best interests of the troops as you view it, as an Inspector of Police would you find it wrong to agree with those who echoed your thoughts about such a policy? Is that good, is that bad, is that something that shouldn't be done or not to be done? Tell us about that. What's your perception?

A: Well, at one time we couldn't do that and I followed the rule that the officers can make statements, that they can—if there is something they don't like, they make a statement about it. I would rather hear the truth than someone lie to me.

Q: You say at one time you couldn't do that. What are you talking about?

A: Well, prior to 1984 we had what we called, quote, the West Point rule. You couldn't say anything. And in 1984 the Fire and Police Commission removed Rule 27 and 28, which at that time was—I guess you would call it a gag rule that says you couldn't talk about the Police Department. And the reason they did that was, I can remember vividly, because they were saying they wanted to

---

C clarifies its position: "While the FPC has already conceded that reasonableness *may* subsume due process considerations ..., *IN AN FPC CASE, DUE PROCESS IS ONLY AN ISSUE WHEN THE AGGRIEVED PARTY RAISES IT.*" (Capitalization and italics in original.)

hear the truth, and I kind of went between, depending upon the situation.

Next, at the close of testimony, Slawinski's lawyer asked the Board to take notice of certain exhibits and stated:

> I'm going to ask that the Commission take quasi-judicial notice of [Slawinski's] Exhibit Number 7, which contains a copy of the order of this Commission expunging from the rules and regulations . . . of the Milwaukee Police Department, Sections 27 and 28, of Rule Number 4, suspended by the Board of Fire and Police Commissioners on May 17, 1984.

The exhibit was received without objection. Finally, in closing argument to the Board, Slawinski's lawyer stated, without specific reference to any particular rule or count, "Not one bit of evidence is in this record that he was ever put on notice."

Aside from these passing references, which merely reflected Slawinski's view that *he* thought he could say what he said, not that this belief was either reasonable or consistent with Rule 4, Section 3, as it had been interpreted, nothing in the record supports any suggestion that Slawinski specifically objected to the application of Rule 4, Section 3, or even hinted that he had been denied due process because of any possible vagueness in its standard.[8] Moreover, the statement

---

[8] We should also note, however, that Slawinski's supplemental brief, requested at the May 28, 1997 oral argument before this court when we invited the parties to, *inter alia*, specify record references reflecting any invocation or litigation of due process issues, concedes: "In reviewing the materials it is clear that there was no direct constitutional challenge at the Fire and Police Commission hearing to the

by Slawinski's lawyer during his closing argument before the Board to the effect that there was no evidence that Slawinski "was ever put on notice," was made after the evidence was closed. It was Slawinski's burden to raise before the Board the alleged constitutional infirmities about which he now complains. He did not do so and it is hardly fair for him to contend that a record is bereft of evidence on an issue about which the opposite party had no notice. In fact, while Slawinski's brief to the circuit court initially referred to a host of due process claims, *see supra*, majority op. at 790, it never offered any argument on them, confining itself, instead, to an argumentative interpretation of the testimony before the Board.[9]

rules and regulations of the Milwaukee Police Department that were the basis for the charges against Slawinski."

Indeed, at oral argument, Slawinski's lawyer disclaimed the necessity of asserting and arguing the due process issues before the FPC, contending that "constitutionality is raised all the time—it becomes pretty much a yawnful issue to raise." Further, at oral argument, the assistant attorney general, representing the circuit court, conceded: "I have a hard time finding in the record where Mr. Slawinski specifically did raise vagueness; where Mr. Slawinski specifically did raise notice." We have searched the record. We have found no factual basis for the dissenting assertion that Slawinski raised these issues.

[9] We are, therefore, perplexed by the circuit court decision's statement: "The certiorari allegations of failure of due process are argued in the plaintiff's briefs in a point by point argument that Slawinski was denied due process and it was unreasonable as a matter of law for the commission to uphold each charge and impose the discipline that it did." We have searched the record and found no such argument. We are similarly perplexed by the dissenting comment that "[t]he parties briefed the 'due process' concept." Concurrence/dissent at 819.

The FPC cites authorities reiterating the limitations on a circuit court's review of a Board decision and concluding that police officers had waived challenges on constitutional issues they had failed to raise before the Board. Relying primarily on *State ex rel. Richey v. Neenah Police & Fire Commission*, 48 Wis. 2d 575, 180 N.W.2d 743 (1970), and *State ex rel. Hennekens v. City of River Falls Fire & Police Commission*, 124 Wis. 2d 413, 369 N.W.2d 670 (1985), the FPC argues that circuit courts are precluded from addressing due process issues under such circumstances. Although *Richey* and *Hennekens* provide some support for FPC's premise, they do not go as far as FPC suggests.

In *Richey*, the supreme court concluded that the police officer who had made "no objection . . . at the time of the hearing [before the Board], or since, that the charge lacked sufficient specificity . . . waived any claim he may have had to the insufficiency of the charges made against him." *Richey*, 48 Wis. 2d at 582–83, 180 N.W.2d at 747. Similarly, in *Hennekens*, the supreme court concluded that because the police officer had objected to a charge based on his contention that it lacked sufficient specificity, he had not waived the issue. *Hennekens*, 124 Wis. 2d at 425, 369 N.W.2d at 676. Contrary to FPC's implication, however, *Richey*'s and *Hennekens*'s consideration of waiver related only to the issue of whether a charge was sufficiently specific. Neither *Richey* nor *Hennekens* considered whether waiver applied to other due process issues, and neither considered whether, regardless of waiver, a circuit court could *sua sponte* address due process issues.[10]

---

[10] *Richey* did, however, declare that because the fire and police commission in that case "was . . . performing a quasi-

The circuit court, apparently aware and perhaps concerned about basing its decision on constitutional issues that had not been litigated, invoked *State ex rel. Meeks v. Gagnon*, 95 Wis. 2d 115, 289 N.W.2d 357 (Ct. App. 1980), for the proposition that a circuit court's review of whether the Board acted according to law, includes consideration of "whether due process of law was afforded." *Id.* at 119, 289 N.W.2d at 361. Slawinski, supporting the circuit court's theory, further argues that the circuit court's evaluation of "reasonableness" also necessarily included its consideration of whether he received due process. As the FPC points out, however, *Meeks* is distinguishable because the aggrieved party *did* raise the issue the court addressed, *id.* at 125, 289 N.W.2d at 364, and further, *Meeks* was a challenge to a circuit court's *certiorari* review of the decision of a prison disciplinary committee; it had nothing to do with a challenge to a police and fire commission decision. *See id.* at 119, 289 N.W.2d at 361; *see also Jendrzejewski v. Fire & Police Comm'rs*, 257 Wis. 536, 539, 44 N.W.2d 270, 272 (1950) (distinguishing "complete review" of "the determinations of most tribunals, boards, and

judicial function, . . . the requirements of due process are clearly applicable." *State ex rel. Richey v. Neenah Police & Fire Comm'n*, 48 Wis. 2d 575, 580, 180 N.W.2d 743, 746 (1970). Further, and, as we shall see, of particular significance to another FPC argument, *Richey* identified "at least three substantial elements of a common-law hearing:" the right to know the charges, the right to meet the charges by competent evidence, and *"the right to be heard by counsel upon the probative force of the evidence adduced by both sides, and upon the law applicable thereto."* *Id.* at 580, 180 N.W.2d at 746 (emphasis added).

commissions" from the "limited review of the disciplinary orders of fire and police commissioners").

Generally, mere reference to an alleged "deprivation of due process" is not sufficient to raise a specific constitutional challenge. *See Dumas v. State*, 90 Wis. 2d 518, 523, 280 N.W.2d 310, 313 (Ct. App. 1979); *see also State v. Scherreiks*, 153 Wis. 2d 510, 520, 451 N.W.2d 759, 763 (Ct. App. 1989) ("Simply to label a claimed error as constitutional does not make it so, and we need not decide the validity of constitutional claims broadly stated but never specifically argued." (citation omitted)). Thus, the FPC is on relatively solid ground in arguing that Slawinski waived any due process claim. This does not end our analysis, however, because, under some circumstances, even when a party fails to raise a constitutional issue, a court will address it.

In *State ex rel. Kalt v. Board of Fire & Police Commissioners*, 145 Wis. 2d 504, 427 N.W.2d 408 (Ct. App. 1988), we rejected this same board's argument that this court could not consider a vagueness challenge to a Milwaukee Police Department rule because the suspended and discharged officers had not raised it at their board hearing. *See id.* at 509, 427 N.W.2d at 411. Indeed, we declared "that when a challenge is made to the constitutionality of a statute, ordinance or, in this case, an administrative rule, on the grounds of vagueness, an issue of subject matter jurisdiction is raised which this court is bound to consider." *Id.*; *see also State v. Holmes*, 106 Wis. 2d 31, 40, 315 N.W.2d 703, 707–08 (1982) (despite waiver, circuit court " 'should raise the [constitutional] question itself where it appears necessary to the proper

disposition of the case.' ") (quoting *State ex rel. Joint School Dist. v. Beckner*, 194 Wis. 464, 468, 215 N.W. 902, 904 (1928)); *L.K. v. B.B.*, 113 Wis. 2d 429, 448, 335 N.W.2d 846, 856 (1983) ("Consideration of a constitutional issue raised for the first time on appeal is discretionary with this court."); *State v. Wilks*, 121 Wis. 2d 93, 107, 358 N.W.2d 273, 280 (1984). We do recognize, however, that in *Kalt* the officers, at least at some point subsequent to the board hearing, raised the vagueness issue. *See Kalt*, 145 Wis. 2d at 507, 427 N.W.2d at 410. In the instant case, by contrast, we still are left to consider whether the circuit court, *sua sponte*, could raise and address vagueness and other due process issues.

Therefore, both the record and the law give us mixed bags: (1) The record: Slawinski, testifying, referred to the suspended "gag rules," and Slawinski's lawyer introduced them into evidence and briefly argued that Slawinski had not received notice. And yet, neither before the Board nor in the circuit court did Slawinski pursue any specific due process issue. The circuit court then drew upon a comparison between the suspended "gag rules" and the standard of Rule 4, Section 3, to support its due process determination. (2) The law: While generally the authorities support FPC's waiver argument, they do not do so absolutely, and, significantly, *Kalt* counters it.[11] No case law clearly

---

[11] Indeed, the FPC implicitly concedes that *State ex rel. Kalt v. Board of Fire & Commissioners*, 145 Wis. 2d 514, 427 N.W.2d 408 (Ct. App. 1988), stands strongly in opposition to its argument. In its supplemental brief to this court, FPC argues that we "should distinguish or set aside" *Kalt* and three other cases because they did address constitutional issues that had been waived. Although we have noted a slight distinction in *Kalt*, *see supra*, majority op. at 809–10, it is a distinction that

confronts the issue of whether a circuit court, reviewing a fire and police commission decision, may *sua sponte* address a constitutional issue the parties did not present or pursue, and decide the case based on that issue.

■

Thus, although we are concerned by the circuit court's stretch to address issues Slawinski never pursued, given the mixed factual and legal bags we must carry in this case, we can only conclude that in addressing due process issues the circuit court did not *clearly* violate its *plain* duty. As the Attorney General argues:

> [B]ecause due process is always a concern in any case where something has been taken away from someone by a government entity, it makes sense that a court charged with determining whether a decision is "reasonable" would consider whether the police officer had been afforded due process. A circuit court is certainly not plainly and positively prohibited from considering due process, and the FP C cites no law to the contrary.

We also conclude, however, that the circuit court clearly violated its plain duty by doing so without allowing the parties the opportunity to develop a factual record before the Board pursuant to § 62.50(21), STATS. (In determining whether "[u]nder the evidence was the decision of the board reasonable," "[t]he court may require additional return to be made

---

makes no difference in this case. We may not "set aside" *Kalt. See Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246, 256 (1997) ("[O]nly the [Wisconsin] [S]upreme [C]ourt . . . has the power to overrule, modify or withdraw language from a published opinion of the court of appeals.").

by the board, and may also require the board to take additional testimony and make return thereof."), and the opportunity to present argument to the circuit court. *See Holmes*, 106 Wis. 2d at 41, 315 N.W.2d at 708 (appropriate for circuit court, *sua sponte*, to raise constitutional issue necessary to disposition where "circuit court posed the question of constitutionality to the parties and gave the parties an opportunity to present legal arguments on the issue.").

As we have noted, whether we grant a petition for a supervisory writ "is controlled by equitable principles and, in our discretion, we can consider the rights of the public." *Dressler*, 163 Wis. 2d at 630, 472 N.W.2d at 536. Here, we consider two powerful competing considerations: the importance of finality following circuit court review of appeals from fire and police commission decisions, *see Jendrzejewski*, 257 Wis. at 539, 44 N.W.2d at 272, and the fundamental fairness of assuring parties the chance to develop a factual record and subsequently to present authorities and arguments to any court making a decision. We also consider the rights of the public to a thorough and fair decision-making process, and to the protection provided by the best possible command of its police force. Under the unusual circumstances of this case, we conclude that the finality of the circuit court's determination must give way to the fundamental fairness of assuring the circuit court's chance to consider a full factual record and the parties' chance to be heard.

In *Bartus v. Department of Health & Social Services*, 176 Wis. 2d 1063, 501 N.W.2d 419 (1993), in the review of a decision revoking probation, the supreme court considered whether this court had authority to raise a question of statutory interpretation

*sua sponte* and dismiss an action without permitting the parties to brief the legal issue. Although the case is distinguishable in certain respects, the supreme court's words offer valuable guidance:

> Declining to adopt a *per se* rule requiring courts to permit the submission of additional briefs whenever an issue is raised *sua sponte,* we nevertheless emphasize this court's preference for requesting briefs whenever they might aid the court. The instant dispute is an example in which the issue raised *sua sponte* was neither jurisdictional nor procedural in nature and the court likely would have benefitted from the filing of additional briefs. Statutory interpretation is a complex task, requiring courts to weigh many variables before arriving at a balanced and reasonable construction of legislative intent. Unlike legal defects that can frequently be resolved without assistance from litigants, statutory interpretation is an area in which the courts usually should be willing to delay their determination until they have the assistance of briefs. The instant decision might not have required this review had the court of appeals permitted the parties to file supplemental briefs. *We therefore urge the courts to exercise caution when determining an issue sua sponte without the assistance of supplemental briefs and to ask for briefs unless the matter is quite clear.*

*Id.* at 1073, 501 N.W.2d at 424 (emphasis added).

Here, the issues are anything but "quite clear," though they may gain considerable clarity not only from the authorities and arguments the parties may offer, but also from the factual record they may develop. Thus, we also emphasize that, particularly when a circuit court *sua sponte* raises what may be complex constitutional issues, it should also assure the

opportunity for further development of the factual record. In an action such as the instant one, that factual development properly takes place before the appropriate board even though that board might not have authority to address the constitutional issue. As the supreme court explained in *Omernick v. Department of Natural Resources*, 100 Wis. 2d 234, 301 N.W.2d 437, *cert. denied,* 454 U.S. 883 (1981), involving a review of a judgment vacating a DNR order, even in "those types of constitutional issues which an administrative agency is not empowered to resolve,. . . all efforts should be directed toward developing a record that is as complete as possible in order to facilitate subsequent judicial review of the record." *See id.* at 248, 301 N.W.2d at 444; *see also* § 62.50(21), STATS. (In determining whether "[u]nder the evidence was the decision of the board reasonable," "[t]he court may require additional return to be made by the board, and may also require the board to take additional testimony and make return thereof.").

Moreover, specifically in a review of a suspension ordered by a fire and police commission, the supreme court has emphasized:

> The principle of fair play is an important factor in a consideration of due process of law. Parties in a legal proceeding have a right to be apprised of the issues involved, and to be heard on such issues. A finding or order made in a proceeding in which there has not been a "full hearing" is a denial of due process.

*Durkin v. Board of Police & Fire Comm'rs*, 48 Wis. 2d 112, 122, 180 N.W.2d 1, 6 (1970) (quoting *General Elec. Co. v. Wisconsin Employment Relations Bd.*, 3 Wis. 2d 227, 241, 88 N.W.2d 691, 700 (1958)); *see also L.K.*, 113

Wis. 2d at 448, 335 N.W.2d at 856 (discretionary consideration of constitutional issue raised for first time on appeal is appropriate "if 'it is in the best interests of justice to do so, if both parties have had the opportunity to brief the issue and if there are no factual issues that need resolution.' ") (citation omitted)).

■■■■
 Thus, although we maintain our commitment to the principle that "judicial review" of actions such as the instant one "should be limited and prompt," *State ex rel. Kaczkowski v. Board of Fire & Police Comm'rs*, 33 Wis. 2d 488, 504, 148 N.W.2d 44, 52, *cert. denied*, 389 U.S. 848 (1967), and although we hold true to the proposition that a supervisory writ will issue "only upon some grievous exigency," *Dressler*, 163 Wis. 2d at 630, 472 N.W.2d at 536, we conclude that further proceedings are required. Finality is of great value, but finality without fairness is fool's gold.

## V. CONCLUSION

Therefore, we grant the FPC's petition for a supervisory writ. In light of the additionally confusing record when reviewed count by count, we offer further guidance to assist the circuit court and Board upon remand.

First, as both the Board and the circuit court correctly recognized, disposition depends on the totality of the circumstances; on whether and the extent to which the various counts have been substantiated. Accordingly, at this time we do not address the circuit court's disposition of count six. The Board may revisit disposition of count six, in combination with counts one, two, and three if substantiated, at the conclusion of the hearing on remand. *See Durkin*, 48 Wis. 2d at 122, 180 N.W.2d at 6

("No court of review has the means of determining whether the Board would have imposed the same penalty had it found the respondent in violation of only two of the violations charged in the complaint."); *see also Hennekens*, 124 Wis. 2d at 418, 369 N.W.2d at 673 ("The court of appeals noted it could not assume that a finding on charges two, three, and four alone would have resulted in Hennekens' dismissal. Thus, it remanded the matter to the circuit court with directions to remand it to the Commission for a redetermination of the penalty.").

Second, we recognize that the circuit court also addressed a Fifth Amendment due process issue on count one regarding Chief Arreola's questioning of Slawinski, and a First Amendment issue on count three regarding Slawinski's comments and conduct at the seminar. Although we have focused primarily on the circuit court's notice/vagueness rationale underlying its decisions on counts one, two, and three, we do not foreclose the parties from developing a factual record and litigating the First and Fifth Amendment issues as well.

Third, we also recognize that, on count one, the circuit court articulated an additional basis for its decision (that, aside from the due process violations, the enormity of the department's response was unreasonable). Although this could provide a basis, independent from any of FPC's challenges, for affirmance of the circuit court's decision on count one, we do not address that possibility at this time. Given the inextricable evidentiary and legal connections among the first three counts, and given the fairness of basing any disposition upon the full record, we think it unwise to segment a separate rationale on count one

from the Board's consideration of counts one, two, and three.

Accordingly, on remand from the circuit court to the Board, the parties will have the opportunity to develop the factual record on counts one, two, and three, as necessary and appropriate to allow them to litigate the due process issues identified by the circuit court. The Board, based on the additional record developed on remand, will have the opportunity to amend its findings on counts one, two, and three, and, as it deems appropriate, to modify its disposition on counts one, two, three, and six. Based on the outcome before the Board, either party, of course, may seek circuit court review and, should the circuit court provide further review, it may consider due process issues on which the parties have had the opportunity to develop a factual record, and on which the parties have had the opportunity to present the circuit court with authorities and argument.[12]

*By the Court.*—Appeal dismissed; petition for supervisory writ granted, judgment reversed and cause remanded with directions.

WEDEMEYER, P.J. *(concurring in part; dissenting in part)*. I write separately for the following reasons. After reviewing the record, I conclude that it is

---

[12] In their supplemental briefs to this court, neither party accepted our invitation to address whether they still disagree about the circuit court's conclusion that the Board's finding on count six "is technically in error" because of what the circuit court considered to be the Board's misunderstanding of when Assistant Chief Graham was promoted. Following remand, the parties may advise the Board if they believe a technical modification of the count six finding is needed.

not necessary nor warranted to remand this case to allow "the parties an opportunity to develop a factual record before the Board and offer legal argument before the circuit court on the constitutional issues . . . ." *See* majority op. at 782. I agree with the majority's conclusion that the circuit court did not exceed its jurisdiction by considering constitutional due process issues as part of its overall evaluation of "reasonableness." I disagree, however, with the majority's conclusion that the circuit court violated its plain duty when it addressed due process issues "without allowing the parties the opportunity to develop a factual record before the Board . . . ." *See* majority op. at 812. I can find no authority holding that it is a violation of a plain legal duty when a circuit court refines an issue that the parties have presented via oral argument or briefs. The parties briefed the "due process" concept. The circuit court defined the due process violations with the labels of "vagueness" and "notice." Accordingly, I would exercise this court's discretion to deny the petition for a supervisory writ. *See Dressler v. Racine County Circuit Court*, 163 Wis. 2d 622, 630, 472 N.W.2d 532, 536 (Ct. App. 1991).

My review of the record reveals that the due process issue was sufficiently raised and, therefore, the circuit court did not commit error or violate a plain duty in deciding the case on due process grounds. Granting a supervisory writ "is considered an extraordinary and drastic remedy that is to be issued only upon some grievous exigency." *Id.* Because the circuit court did not err, and because Slawinski did raise due process issues throughout the legal process below, there is no "grievous exigency" in this case. *See id.*

Prior to the hearing in this case, Slawinski argued that his demotion before a hearing in front of the Board violated due process of law.[1] This issue was briefed and placed on the agenda for the July 1, 1993 Board meeting. The Board declined to decide the issue. Slawinski again requested that the matter be ruled on and the Board finally did so in October 1993. The Board ruled against Slawinski. The issue was raised again at the hearing held in April 1994, but the Board denied Slawinski's motion to reconsider the decision.

The majority opinion acknowledges that Slawinski did raise "slight" due process issues at the April 1994 hearing, *see* majority op. at 805–06, in the form of Slawinski's own testimony regarding the "gag rule", his counsel's request that the Board take quasi-judicial notice of certain exhibits, and his counsel's statement in closing argument that there was "[n]ot one bit of evidence in this record that he was ever put on notice." In addition, however, my review of the hearing transcript demonstrates that Slawinski was questioned with regard to notice. Slawinski testified in pertinent part:

Q. Did Chief Arreola ever call you in before the day you were suspended and sit you down and say to you, "Inspector, I'm hearing bad reports that you are not happy and that you are saying negative things." Were you ever brought in to talk to him?

---

[1] I note that this due process argument was different from the due process reasons relied on by the circuit court. Nevertheless, raising due process concerns afforded both sides an opportunity to present evidence documenting that due process was or was not violated.

A. I was brought in to talk to him a couple times. Everybody had a chance to come in and talk with him.

Q. My question is, did he ever call you in and tell you that you were expressing too much unhappiness and that you had to change your tune?

A. Not in those specifics, no.

Q. Well, tell us about what the Chief ever talked to you about relative to the kinds of things that we have here. Were you ever talked to about the fact that you supposedly called him an idiot, the fact that you were a little pushy at the seminar, the fact that Bacich and Louzecky told him or it got back to him that there was too much bitching going on by you?

A. Nobody ever told me anything.

Q. I want to know if Chief Arreola did.

A. About any of those things? No.

Further, in closing argument, Slawinski's counsel stated:

First off, I want to say that I cannot imagine any case that is as weak as this is, that has been brought before you for consideration as to whether or not for the first time in the history of the Milwaukee Police Department an Inspector of Police should be as humiliated, castigated and made to suffer as has Joseph Slawinski on the basis of this nonsense that has been presented here.

We are talking about a *due process* hearing where the City has to prove its case by a preponderance of the evidence that there exists sufficient evidence to support the conduct of the Chief of Police of this city. (Emphasis added.)

Although the references specifically labeling the argument "due process" at the hearing before the

Board are limited, the practical effect of Slawinski's individual testimony is that his rights were violated. He testified about the manner in which he was demoted and the pertinent facts as to each individual charge. He testified that he was not given any notice—i.e. proper due process—before his property right was taken away from him. The notice argument was again raised at the time of the disposition hearing in June 1994, when Slawinski's counsel argued:

> Now, I just think it's almost laughable that a fellow is going to lose $21,000 a year in income who has been disgraced as he has publicly, who is going to lose pension benefits for the rest of his life after devoting thirty years to this city, and never one time was brought in and sat down and say [sic] "We got a problem, Inspector, and you're going to shape up or ship out or I'm going to have to prefer charges against you. I'll hear no more bitching behind my back, I'll hear no more this, no more that."
> . . .[T]hat wasn't done[.]
> . . . .
> I just think that we have lost our heart in this country. We don't have any heart any more. We get so stone cold about people, to not bring a fellow in who has worked thirty years in this department, for this city, . . . and sit [him] down and say "Hey, pal, you got to change or else. You can't do the old with me. You got to be part of my management team or I want you out of here, whether voluntarily or involuntarily, because I'm going to watch you like a hawk. And if I find out you're talking behind my back, you're going to be in big trouble pal. So shape up or ship out, and that means I don't want you talking to anybody."

In his complaint for certiorari review from the circuit court, Slawinski alleged that the "Board

proceeded on an incorrect theory of law and exceeded its jurisdiction by violating Slawinski's right to due process." Further, in his brief, Slawinski asserted that the Board deprived him of "a property right without due process of law." On the notice issue, Slawinski's brief argues: "There was no progressive discipline. There was no counseling. There was no warnings to cease and desist."

The FPC's response brief on the certiorari action argues: (1) with respect to notice issues, after detailing what notice was provided concludes: "In light of the above, the warnings were there. Slawinski chose not to listen. He self-destructed."; and (2) with regard to the due process claim stated: "Likewise, courts have held no denial of due process where the charges are detailed and specific and supported by adequate findings. . . . Slawinski had all this. . . . Thus, no due process violation." Later, the same brief argues: "Here again is another due process protection for Slawinski that shows that his 'deprivation of pay without due process' argument is not true." Nowhere in its brief to the circuit court does the FPC argue that Slawinski cannot assert a constitutional due process claim because he did not raise this claim in front of the Board or that he has not properly raised his constitutional claim.

In its brief to the circuit court pertaining to the statutory action, the FPC repeats the same arguments and adds: "Rules prohibiting insubordination and public criticism of superior officers constitute a reasonable and valid regulation of the constitutional right of free speech in the interests of departmental discipline."; and later, argues that the rules of the department "have a reasonable relation to the needs of the Department." Although the latter statement does not label itself as a defense to a constitutional

challenge to the Department's rules, this was its effect. The FPC again states that "Slawinski was warned," in defending Slawinski's claims that he was not provided with proper notice.

The circuit court reviewed the record from the hearing to determine whether the Board's decision was reasonable. *See* § 62.50(21), STATS. Consideration of whether due process has been followed is always inherently within such a determination. *See State ex rel. Meeks v. Gagnon,* 95 Wis. 2d 115, 119, 289 N.W.2d 357, 361 (Ct. App. 1980). Although there are not frequent specific references to a constitutional due process challenge in the hearing transcripts, there are several portions that raise this issue.

Furthermore, the circuit court was presented with briefs from both sides that argue the constitutional due process issues, and therefore properly decided the issue. *See Just v. Marinette County,* 56 Wis. 2d 7, 26, 201 N.W.2d 761, 772 (1972) (circuit courts encouraged to decide constitutional issues); *see also City of Milwaukee v. Wroten,* 160 Wis. 2d 207, 217, 466 N.W.2d 861, 865 (1991) ("courts in which constitutional questions are raised should decide them"). Slawinski's briefs make both an umbrella reference to due process violations and specific reference to lack of proper notice. Further, Slawinski's brief sets forth point by point the facts pertinent to each alleged violation, together with argument demonstrating why the Board's decision was unreasonable. Based on the interplay between reasonableness and due process, the circuit court viewed this portion of Slawinski's brief as specific argument on his due process claim.

The FPC's brief responds by denying any due process violation, explaining how Slawinski was repeatedly warned (or put on notice) and actually

attempts to defend the rules as constitutional. It is rather ingenuous of the FPC to now argue that it had no opportunity to present argument on the due process issue, when it denied that due process was violated at all.

In reviewing the Board's decision, the circuit court had three options: (1) affirm, (2) reverse, or (3) remand to the Board. *See State ex rel. Momon v. Milwaukee County Civil Service Comm'n*, 61 Wis. 2d 313, 318–21, 212 N.W.2d 158, 161–62 (1973). When a reviewing court selects one of the three options available to it, assuming support in the record for the choice, even though it could have selected another alternative supported by the record, the choice that it made does not equate to a violation of a plain duty. There is no support in the law or logic for such a conclusion. Faced with this, I conclude that the circuit court did not commit error when it based its decision on constitutional due process violations. Nor did it commit error by failing to allow the parties to develop a factual record. The record contained enough facts to allow the trial court to make its decision. Both sides presented facts pertinent to this issue by presenting witnesses to testify as to the chronology of events and both sides had an opportunity to present legal argument.[2]

Therefore, in the interests of judicial economy and efficient administration of our system of jurisprudence,

---

[2] Further, I am not persuaded by the FPC's argument that Slawinski never raised a due process claim based on the fact that the rule he was charged with violating was unconstitutionally vague. Despite the accuracy of this contention, there is no need to remand the matter. The circuit court is capable of making this constitutional legal determination without argument from the parties, which it did based on the pertinent facts.

I would deny the writ and affirm the judgment of the circuit court.